THE NATIONAL BANK OF COMMERCE OF KANSAS CITY v. MORRIS et al., Appellants.

Division Two, December 4, 1894.

1. **Chattel Mortgage:** SALE OF PROPERTY. A mortgagor may sell the mortgaged chattel absolved from any lien with the consent of the mortgagee.

2. ———: ———. Where the mortgage provides that, if an attempt is made to sell the property or to remove it from the county where it is situated, the mortgagee may sell it, the latter may take possession and sell if the property has been sold by the mortgagor without the mortgagee's consent.

3. **Evidence:** AGENCY. An agency can not be proved by the admissions or statements of a supposed agent.

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

AFFIRMED.

*Augustus Binswanger, Charles M. Reber* and *Edward S. Robert* for appellants.

(1) A mortgagor may sell the mortgaged chattel, free from the lien, with the oral consent of the mort-

gagee. Jones on Chattel Mortgages [4 Ed.], secs. 456 and 486; *Holloway v. Arnold*, 92 Mo. 293; *Stafford v. Whitcomb*, 8 Allen, 518; *Pratt v. Maynard*, 116 Mass. 388; *Brant v. Daniels*, 45 Ill. 453; *Gage v. Whittier*, 17 N. H. 317; *Saxton v. Williams*, 15 Wis. 292; *Perry v. Dow*, 56 Vt. 569; *Littlejohn v. Pearson*, 23 Neb. 192; *Bank v. Weed*, 89 Mich. 357. (2) *First*, The mortgagor has the right to sell all of his interest before maturity of the debt, or it may be sold on execution. Jones on Chattel Mortgages [4 Ed.], sec. 454, and cases cited; *Gage v. Whittier*, 17 N. H. 312; *Caldwell v. Pray*, 41 Mich. 307; *Hathaway v. Braynard*, 42 N. Y. 322; *Hamill v. Gillespie*, 48 N. Y. 556; *State v. Carroll*, 24 Mo. App. 358; *Spaulding v. Mozier*, 57 Ill. 148; *Porter v. Parmley*, 43 How. Pr. 445; *Bank v. Metcalf*, 29 Mo. App. 384; *Keflin v. Slay*, 78 Ala. 180. *Second*, And this though the mortgagor is forbidden by statute to sell without the written consent of the mortgagee. Jones on Chattel Mortgages [4 Ed.], secs. 455, 456; *Gage v. Whittier*, 17 N. H. 312. *Third.* Authority in the mortgagor to sell may be inferred. Jones on Chattel Mortgages [4 Ed.], sec. 457, and cases cited. (3) The right to take possession in case of insecurity or sale is an option which the mortgagee may or may not exercise. *Bank v. Metcalf*, 29 Mo. App. 384; *Skiff v. Solace*, 23 Vt. 279; *Caldwell v. Pray*, 41 Mich. 307. (4) *First*, A purchaser of a mortgaged chattel can not be held liable for a conversion of it without a definite demand by the mortgagee. Jones on Chattel Mortgages [4 Ed.], sec. 491; *Ware v. Society*, 125 Mass. 584; *Hathaway v. Braynard*, 42 N. Y. 322; *Caldwell v. Pray*, 41 Mich. 307–312. *Second*, The same principle is recognized in *Weill v. Tyler*, 38 Mo. 545; *State v. Mooney*, 65 Mo. 494. (5) Plaintiff should have shown what it got from the sale of the bank stock; it being only entitled to recover the balance due on its note.

Jones on Chattel Mortgages [4 Ed.], sec. 788 and cases cited; *High v. Brown*, 46 Iowa, 259; *Gage v. Whittier*, 17 N. H. 312; *Bank v. McLaughlin*, 1 McCrary, 258.

*John C. Orrick* for respondent.

(1) The court below did not err in ignoring the defense that Dunn, as agent of the bank, had given Webber and Wilson, the thieves who stole the cattle, oral authority to sell. (2) The court did not err in refusing the first and second declarations of law asked by defendants. (3) A mortgagor may sell the mortgaged chattel free from the lien, with the consent of the mortgagee, as claimed by appellants in their first point. *Holloway v. Arnold*, 92 Mo. 293. (4) This court, in *Bank v. Morris*, 114 Mo. 255, decided that a purchaser of a mortgaged chattel can be held liable for a conversion of it without a definite demand by the mortgagee.

BURGESS, J.—This is an action of trover and conversion of five hundred and seventy head of cattle. The trial resulted in a judgment for plaintiff in the sum of $11,979.05 from which defendants appeal. The case was before this court on a former occasion, and will be found reported in 114 Mo. 255, to which reference is made for a full statement of the facts.

On the last trial an effort was made to show that the cattle were sold by the mortgagors by and with the consent of the mortgagee, Dunn, and that at the time of giving such consent he was the agent of plaintiff.

At the instance of plaintiff, the court, over defendants' objections, declared the law to be as follows:

"1. If the court finds from the evidence that on or about November 5, 1890, the plaintiff agreed with

G. A. Dunn to accept and did accept the note of Webber and Wilson for $15,675, dated October 22, 1890, secured by chattel mortgage in lieu of the mortgage held by it on said cattle given by said Dunn to secure his note to this plaintiff, dated May 2, 1890, for $15,000, maturing November 5, 1890, such agreement and acceptance operated as a release in fact of the mortgage given by said Dunn to this plaintiff, and plaintiff could not thereafter enforce the same against the said cattle.

"2. The court declares the law to be that the rights of the plaintiff to the cattle in question must be determined by the laws of the state of Kansas, where the sale by Dunn to Webber and Wilson occurred, and that a mortgage to be valid under the laws of the state of Kansas must be deposited in the office of the register of deeds of the county where the mortgagor resides and there noted in books in said office there kept for that purpose as fully appears by the laws of the state of Kansas and by the testimony of the registers of deeds of Edwards and Stafford counties, in evidence in this case, and if the court finds that Webber and Wilson gave a note for $15,675, representing the purchase money for these cattle, and to secure payment of the same executed a mortgage to G. A. Dunn, the owner, and that said Webber and said Wilson respectively resided in said Stafford and Edwards at the said time, and that a true copy of said mortgage was recorded in said counties and that said Dunn to secure a *bona fide* indebtedness to this plaintiff in the sum of $15,000, gave his negotiable promissory note to said plaintiff in renewal therefor and to further secure the same indorsed said note received by him from said Webber and Wilson, and delivered said note secured by said mortgage to said plaintiff, and that said indebtedness to plaintiff has not been paid but remains

unpaid in whole or in part, and that plaintiff continues to hold said note given by said Webber and Wilson to said Dunn as collateral as aforesaid, and that said cattle were disposed of without the knowledge or consent of this plaintiff to defendants, then defendants obtained no title to the same and plaintiff is entitled to recover of defendants the fair market value of said cattle at the National Stock Yards, East St. Louis, Illinois, on the day defendants claim to have purchased the same, not exceeding the sum of $15,675, with interest from December 10, 1890, at six per cent. per annum on such fair market value to date; and the fact that defendants may have in good faith paid full value for said cattle does not relieve them from liability in this action.

"3. If the court finds from the evidence that G. A. Dunn, on or about November 5, 1890, being justly indebted to plaintiff in the sum of $15,000, gave his negotiable promissory note therefor to plaintiff, and as collateral therefor transferred to plaintiff the said note of Webber and Wilson to him for $15,675, secured by mortgage here in evidence, and that on December 10, 1890, this plaintiff was the owner thereof, then and in that case any permission given by said Dunn to said Webber and Wilson to sell said cattle does not relieve defendants from liability in this action.

"4. If the court finds from the evidence that George A. Dunn was the owner of the cattle in question, in the state of Kansas; that he sold them to W. D. Wilson and B. A. Webber for $15,675, and took their notes, at ten months after date, for said sum, secured by the chattel mortgage on same, in evidence; that copies of the said mortgage were, in the month of November, 1890, duly deposited with the register of deeds of the counties in Kansas, as provided by the laws of Kansas where said Webber and Wilson resided; that

the said Dunn, at or about said date, transferred and assigned said note and mortgage to the plaintiff to secure the sum of $15,000, evidenced by said Dunn's note, owned by the plaintiff, and that the plaintiff owned and held said mortgage and note of Webber and Wilson at the time said cattle were disposed of to the defendants, and were disposed of to defendants without the knowledge and consent of the plaintiff, it will find for the plaintiff an amount equal to the market value of said cattle at the St. Louis National Stock Yards, on the date that defendants obtained possession of said cattle, not exceeding, with six per cent. interest per annum thereon to date, the amount of said note of said Webber and Wilson, with interest at ten per cent. per annum from October 22, 1890, to date."

Defendants asked the following declarations of law, which were refused, and they duly excepted.

"1. If the jury find the facts to be true as stated in instruction number 1, as asked by defendants, then the verdict must be for the defendants, notwithstanding the fact, if it be a fact, that Webber and Wilson or either of them never paid over the money received on the sale of the cattle to said Dunn or to said plaintiff.

"2. If the jury believe from the evidence in this case that between October 22 and November 8, 1890, Webber and Wilson purchased of one G. A. Dunn, the cattle referred to in the petition and if as consideration for said purchase, said Webber and Wilson agreed to and did execute and deliver to said Dunn the note for $15,675 and the chattel mortgage read in evidence, and if, in order to induce said Webber and Wilson to so purchase said cattle on the terms aforesaid, or as any part of the consideration for the said contract of purchase, the said Dunn gave permission to said Webber and Wilson to sell said cattle, at any time they pleased, notwithstanding the terms of said chattel

mortgage, in order to raise the money to pay for said cattle. And if, on the terms aforesaid, said cattle were delivered by said Dunn to Webber and Wilson; and if the jury believe from the evidence that after receiving said note and chattel mortgage the said Dunn indorsed said note and delivered it with said mortgage to the plaintiff bank, as collateral security for the payment of a pre-existing indebtedness due by said Dunn to the plaintiff and for no other consideration moving the said Dunn so to do at the time. And if the jury find that pursuant to the permission to sell so given by said Dunn the said Webber and Wilson, or either of them, transported said cattle from the state of Kansas to the city of East St. Louis, in the state of Illinois, and there delivered said cattle to certain public stock yards kept there for the reception of cattle intended for sale, and there employed the firm of Cash, Overstreet & Stewart, cattle brokers, to make sale of said cattle for them, and if pursuant to such employment the said firm of brokers sold said cattle in open market, to the defendants, for their fair and reasonable value; and if the defendants at the time were residents of the state of Illinois and purchased said cattle without any knowledge of any claim of the plaintiff upon the same, then the plaintiff can not recover in this action and your verdict must be for the defendants.''

There is really but one question to be passed upon by this court, and that is the action of the trial court in giving the third declaration of law on behalf of plaintiff, and in refusing those prayed for by defendants, which in effect ignored the defense that G. A. Dunn as agent of the plaintiff had given authority to Webber and Wilson to sell the cattle. All other questions involved were passed upon in the former opinion.

It is perfectly clear that a mortgagor may sell the mortgaged chattel, free from the lien, by and with the

consent of the mortgagee. But it is also true, that if the property be sold without the agreement or consent of the mortgagee, when the mortgage provides, as in this case, by its express terms, that, in default of payment, or attempt to sell or dispose of the property or removal or attempt to remove it from the county where situated, the mortgagee may take possession of it, sell it and apply the proceeds to the payment of his debt, he may take it although it may have been sold by the mortgagors. *Holloway v. Arnold*, 92 Mo. 293, and authorities cited.

The defense was ignored most unquestionably for the reason that there was no evidence upon which to predicate it. Both Dunn, the mortgagee, and W. J. Woods, president of the plaintiff bank, testified that Dunn was not the agent of the plaintiff in regard to the cattle, and that he had no authority whatever to give permission or to authorize the sale of the cattle by Webber and Wilson. The mere fact that Dunn may have said that he was the agent of plaintiff did not make him such, and was no evidence of the fact. "An agency can not be proven by the admissions or statements of a supposed agent." *Salmon Falls Bank v. Leyser*, 116 Mo. 51, and authorities cited. Such statements were mere hearsay.

The case seems to have been tried in conformity with the views expressed in the former opinion when the case was here before. The judgment is affirmed. All of this division concur.