HACKETT et al., Respondents, v. VAN FRANK, Appellant.

St. Louis Court of Appeals, March 1, 1904.

1. **PRINCIPAL AND AGENT: Authority of Agent: Question for Jury.** In an action of assumpsit for merchandise sold and delivered, where the question at issue is whether the one who ordered the goods on the defendant's credit, had authority to act as defendant's agent, or if not, whether the conduct of the defendant estopped him from denying the agency, or had ratified the acts of the alleged agent, the evidence is examined at length and held sufficient to justify a submission of the questions to the jury.

2. ———: ———: **Incidental Powers.** If an agent have direct authority to bind his principal in a particular transaction, this direct authority will carry with it by implication of law such powers as are suitable and reasonably necessary to accomplish the intended purposes, though no incidental powers were mentioned between the principal and the agent.

3. ———: ———: **Ratification.** If a man, without right, assumes to act for another, the act will be attributed to, and affect the person represented if he acquiesces in and adopts it; and this, whether the actor was devoid of any authority, or went beyond an authority he had.

4. ———: ———: **Estoppel.** A man may be bound by an unauthorized and unratified act of a pretended agent, when his conduct induced some one to trust such pretending agent's assumed authority in matters which would entail a loss on the trusting party, if the one represented were permitted to deny responsibility.

5. ———: ———: **Circumstantial Evidence.** That an alleged principal knew what was done in his name by another, may be established by direct evidence, or by proof that it was done in a manner to warrant the inference that he knew of it.

6. ———: ———: **Implied Powers.** Where an agent had the management of a beer business for his principal, such agency did not give him the right to purchase whiskey in quantities on the defendant's credit, since that was not an authority commonly incident to such a business.

7. ———: ———: **Estoppel.** Where an agent acts beyond his authority, the principal he assumes to represent will be bound when the person dealt with had the right, in view of all the facts known to him, to believe he was dealing with an actual agent about a matter within the scope of the latter's authority, did believe it and rely upon it.

8. ———: ———: **Declarations of Agent.** The declarations of an agent as to the scope of his authority are not admissible in evidence against the person for whom he assumes to act, in the absence of proof that such person knew of them.

9. ———: ———: **Evidence: Instruction.** It was proper for one who sold merchandise, on the belief that an assumed agent of the supposed purchaser had authority to purchase, to testify that the goods were sold on the supposed principal's credit, but in such case the jury should have been instructed that the evidence should not be considered for the purpose of determining the issue of the agency, but only for the purpose of showing to whom the seller looked for payment.

Hackett v. Van Frank.

10. ———: ———: **Estoppel.** In an action for the price of a quantity of whiskey, sold and delivered by plaintiff on the defendant's credit, to one assuming to act as agent for the defendant, where the agent had the express authority to manage a beer business for the defendant, the fact that a license as a wholesale liquor dealer was issued to the defendant and posted up in the room where the beer business was conducted and where the whiskey so purchased was kept, is inadequate to estop the defendant from denying the assumed agent's authority.

11. ———: ———: ———. Neither is the fact that the tags on such whiskey barrels bore the defendant's name, sufficient to estop him from denying the agent's authority, where the plaintiff did not pretend that he was induced to sell the goods in controversy on account of the defendant's opportunity to see his name on the tags.

12. ———: ———: ———. Evidence that the defendant received a telegram from plaintiff in the presence of plaintiff's agent, and, in reply to a statement of the agent that the telegram meant that defendant should pay the plaintiff some money, the defendant gave an affirmative answer, was sufficient to sumit the question of estoppel to the jury as to goods sold after that date, but not as to goods sold before that date.

13. ———: ———: **Ratification.** In order to prove the actual authority of an agent, or ratification of assumed authority, it is not necessary to show that the circumstances tending to establish such authority, or assumed authority, were relied on by the party asserting it; but such circumstances must show that it was the intention of the party to be charged to authorize, or abide by, what was done.

14. ———: ———. In an action for the price of a quantity of whiskey purchased by an assumed agent of the defendant, where the agent's admitted authority was to conduct a beer business, the files of an action by the defendant to recover the price of the beer, sold by the alleged agent for him, were inadmissible in evidence.

Appeal from Madison Circuit Court.—*Hon. R. A. Anthony,* Judge.

REVERSED AND REMANDED.

*R. L. Wilson* and *W. H. Miller* for appellant.

(1)   A party can only become the agent by the will of the principal.   Mechem on Agency, sec. 80.   (2) Agency is either actual or ostensible, and is actual when the agent is really employed by the principal; and agency is ostensible when the principal intentionally, causes a third person to believe another to be his agent who is not really employed by him.   Mechem on Agency, sec. 4.   (3)   Whoever deals with an agent is put upon his guard by that very fact, and does so at his risk.   It is his duty to inquire into and ascertain the nature and extent of the powers of the agent, and determine whether the act or contract about to be consummated comes within the province of the agency, and will or not bind the principal.   Ignorance of the agent's authority is no excuse.   The principal may be careless in reposing confidence in his agent, yet this does not make him liable to a third party, who in dealing with such agent, fails to exercise diligence.   Mechem on Agency, sec. 289, note 2; Ib., sec. 298, note 2; Alexander v. Rollins, 14 Mo. App. 109.   (4)   To constitute an estoppel *in pais,* there must have been a false representation or concealment of material facts, made with the knowledge of such facts, to one who was ignorant of the truth of the matter with the intent that he should act upon it.   Blodgett v. Perry, 97 Mo. 263.   (5)   Estoppel *in pais,* is a right arising from acts, admissions or conduct which have induced a change of position in accordance with the real or apparent intention of the party against whom it is alleged.   Workman v. Wright, 31 Am. Rep. 546; Johnson-Brinkman Comm. Co. v. Railway, 126 Mo. 353; Acton v. Dooly, 74 Mo. 63; DeBerry v. Wheeler, 128 Mo. 84.   (6)   There was nothing in Van Frank's previous course of business to lead the traveling salesman to believe that Dunlop was his agent for the purpose of buying whiskey, brandy or vinous liquors.   He was a dealer or jobber in beer. A party may have an agent authorized to buy rye, but that would not make the principal liable to a party who

sold his agent wheat. 1 Parsons on Contracts (5 Ed.), 43, 44, 45; Wheeler v. McGuire; Mechem's Cases on Agency, 363; Anderson v. Volmer, 73 Mo. 403. (7) We insist that under the law and the evidence that defendant knew nothing of the purchase of the goods mentioned in plaintiff's petition, and at the time of the purchase, Dunlop was not the agent of defendant. And the purchase of Dunlop, under the representations made by him, was obtaining goods under false pretenses, and that was an act that the defendant could not ratify. McHugh v. County of Schuylkill, 5 Am. Rep. 445; Janis v. Roentgen, 52 Mo. App. 114; Shisler v. Vandike, 37 Am. Rep. 702; Summers v. Summers, 54 Mo. 345; McCoy v. Greene, 83 Mo. 626; Henry v. Heeb, Mechem's Cases on Agency, 115. The burden of proof of ratification rests upon the party alleging it. Mechem on the Law of Agency, sec. 132. There was no evidence that VanFrank shared the benefit of Dunlop's wrong doing. Consequently no *post facto* ratification. Ruggles v. Washington Co., 3 Mo. 496; Story on Agency, secs. 255 and 258; Ward v. Williams, 26 Ill. 451; Gold Mining Co. v. National Bank, 96 U. S. 640; Heyn v. O'Hagen, Mechem's Cases on Agency, 186. (8) The mere fact that Dunlop may have said he was the agent of appellant did not make him so. An agency can not be proven by the admissions or statements of a supposed agent. Such statements are mere hearsay. Salmon Falls Bank v. Leyser, 116 Mo. 68; National Bank of Commerce v. Morris, 125 Mo. 350; Diel v. Railway, 37 Mo. App. 457; Mitchim v. Dunlop, 98 Mo. 448; Waverly Timber & Iron Co. v. St. Louis Co., 112 Mo. 383. (9) The scope of an agent's authority can not be shown by his acts, when they have never come to the knowledge of the principal. The testimony of witnesses in relation to the sayings and acts of Dunlop should have been excluded. Alt v. Grosclose, 61 Mo. App. 409; Farrar v Cramer, 5 Mo. App. 167; Williams v. Edwards, 94 Mo. 447.

*R. H. Whitelaw*, for respondent.

(1) An agent's appointment may be implied from the conduct of the parties. This being so, good faith is strenuously insisted upon and one, who by his conduct, has led an innocent party to rely upon the appearance of another's authority to act for him, will not be heard to deny the agency to that party's prejudice. Hence it is this, that in many cases the existence of an agency is implied or presumed from the words or conduct of the parties and this too, although the creation of an agency was not within their immediate contemplation. Mechem on Agency, sec. 82, et seq. It does not require direct evidence to establish an agency; for like any other fact it may be established by circumstances, the conduct of the parties and the relations previously existing between them. Hull v. Jones, 69 Mo. 587; Mitchim v. Dunlop, 98 Mo. 418; North v. Ollis, 61 Mo. App. 401; Mosby v. Commission Co., 91 App. 500. (2) And a party may be bound by the unauthorized act of another on the principle of estoppel as where he has placed such other in a position as to his property which was calculated to deceive others dealing with such person as apparent agent in reference thereto. Hoppe v. Saylor, 53 Mo. App. 4; Mechem on Agency, sec. 83, et seq. (3) The authority of an agent need not necessarily be proven by an express contract, but may be proven by the habit and course of business of the principal. Brooks v. Jamison, 55 Mo. 500. (4) Agency may be shown by proof that the alleged agent acted publicly and continuously about alleged principal's business with his knowledge and apparent consent. McGinnis v. Mitchell, 21 Mo. App. 493; Edwards v. Thomas, 66 Mo. 468. (5) It is a question for the jury to determine under proper instructions from the court, not only whether the agency exists, but if so what its nature and extent. Mechem on Agency, sec. 106; Barrett v. Railroad, 9 Mo. App. 226;

Harrison v. Railway, 50 Mo. App. 333; Hoppe v. Saylor, 53 Mo. App. 4; Shewalter v. Railroad, 84 Mo. App. 389; Middleton v. Railway, 62 Mo. 579. (6) Where a party has so acted as to lead others to believe that a third party has authority to act as his agent, any loss which occurs through the acts of such third party should fall on him whose conduct caused the mistake. Rice v. Groffman, 56 Mo. 434. (7) Those dealing with an agent have the right to conclude that the principal intends the agent to have and exercise those powers only which necessarily belong to the character in which he holds himself out and this irrespective of any instructions or restrictions on his power. And this authority may be inferred from the agent's employment.

GOODE, J.—Assumpsit in the usual form for merchandise said to have been sold and delivered to the defendant. Plaintiffs are a firm of wholesale liquor dealers in the city of Louisville, Kentucky, and the merchandise sold was chiefly whiskey. The account consisted of three or four different sales made between June 23d and December 6, 1899. The liquors were consigned to the defendant at Cape Girardeau, Missouri. The points of controversy are whether F. H. Dunlop, the defendant's son-in-law, who ordered the goods on the defendant's credit and assuming to act as the defendant's agent, had authority to order them; or if not, whether the conduct of the defendant estops him from resisting payment on the score of Dunlop's want of authority.

The assignment of error to be disposed of first is that there was no evidence to go to the jury in support of either hypothesis of liability. The defendant is a man of advanced years, and, as we gather, a widower. Previous to 1899 he had given his daughter, Mrs. Dunlop, the Riverview Hotel in Cape Girardeau, and

its furnishings; but early in 1899 the hotel was sold under a deed of trust put on it by Dunlop and his wife, and the defendant bought it, and likewise bought the furnishings at a private sale made by the assignee of Dunlop and wife, who had executed an assignment for the benefit or their creditors. The title to the hotel remained in Van Frank; but the Dunlops occupied it and he lived with them. In whose name the hotel business was conducted, the record leaves uncertain. Van Frank testified that about March, 1899, Dunlop desired to obtain the agency of the Anheuser-Busch Brewing Association for the sale of beer. The only arrangement that could be effected was for the defendant to guarantee payment for the beer, which he did. Afterwards, at Dunlop's solicitation, defendant consented to have the beer shipped to Cape Girardeau in his name, instead of Dunlop's, to facilitate the business. Thereafter, during 1899, the beer business, as defendant concedes, was conducted in his name by F. H. Dunlop, as agent; but he contends that the agency embraced nothing else. Dunlop, however, made some purchases of whiskey, including what was bought from the plaintiffs, as the agent of Van Frank and on the latter's credit. It was shown that he bought at least one bill from the Rothman Distilling Company. The only transactions with the plaintiffs were those covered by this suit; and they occurred between F. D. Sugg, a traveling salesman of the plaintiffs, and Dunlop, who gave Sugg orders for the liquor in Van Frank's name and they were sold and shipped on the latter's credit, after an investigation of his financial standing. The beer business Dunlop managed was a wholesale one, and was carried on in a room of the basement of the Riverview Hotel, where cases and kegs of beer and the barrels of whiskey afterwards purchased were kept, and were visible to anyone who entered the room, as Van Frank occasionally did. On August 3, 1899, a license as wholesale liquor dealer was issued in Van

Frank's name by the United States collector. Dunlop procured this license, Van Frank says, without his knowledge or consent; but the license certificate was posted in plain view in the room where the liquors were kept and was observed by Sugg. It was also proven that ten or twelve barrels of whiskey were on the floor of the ware room at one time, with shipping tags on them bearing Van Frank's name; thus showing the whiskey had been shipped to him. These labels could be read by anyone whose attention they attracted; but Van Frank testified he never noticed his name on them. Another circumstance relied on to show he had knowledge the goods in controversy were purchased in his name was that one day in November, 1899, he got a telegram from the plaintiffs and opened it in the presence of Sugg, saying: "This is a message from those Greenbrier people," and asking what it meant. Sugg replied: "It means for you people to pay us some money;" to which Van Frank answered, "Yes." It was also shown that the city of Cape Girardeau had issued a merchant's license to F. H. Dunlop, agent.

The above is a summary of the facts which are said to have been for the jury's consideration as going to establish an actual or ostensible authority in Dunlop to make the purchases; and we think they were sufficient for that purpose. The incident of the telegram, which probably requested Van Frank to pay for some of the whiskey, or, if it did not, led Sugg to tell him that the plaintiffs wanted him to pay them, and Van Frank to assent to Sugg's remark, was evidence that the former recognized a responsibility for Dunlop's purchases and ratified, if he had not previously authorized, them. Moreover, some of the goods were bought afterwards, and as Van Frank made no protest then against being regarded as responsible, his behavior may have induced Sugg to believe Dunlop had not acted without authority. There was testimony, too, that the whiskey was billed to Van Frank and that the

Hackett v. Van Frank.

plaintiffs addressed some correspondence to him about it. Of course, all those things could have happened without Van Frank's knowledge or complicity. They are consistent with the view that he did not know the whiskey had been bought on his credit until he was apprised of the truth by the first suit against him, which was brought by the Rothmann Distilling Company. Still, as he was aware that his son-in-law was insolvent, and had made an assignment for the benefit of his creditors and that the hotel had been sold under a deed of trust, he must have been aware that Dunlop had no commercial standing; and it strikes one as somewhat improbable that he made no inquiry as to how such a large quantity of whiskey as he saw in the ware room, was procured. On the other hand, Sugg never asked Van-Frank about Dunlop's authority, which is a noticeable fact, too. On the whole, we think the case was for the jury to decide.

We will next examine the errors assigned because of the admission of certain evidence and the rulings on the requests for instructions; and in treating the questions presented by those assignments, it will be convenient to premise some observations of a general nature in regard to proving an agency and the scope of the authority that accompanies it. An agent may possess direct authority to bind his principal in a particular transaction; that is to say, the principal may expressly empower the agent to bind him; and this direct authority will carry with it, by implication of law, such powers as are suitable and reasonably necessary to accomplish the intended purpose, though no secondary or incidental powers were mentioned between the principal and the agent. Then, too, the custom of business will commonly endow an agent appointed to a position of trust, as, for example, the cashier of a bank, or to transact an affair, like the adjustment of an insurance loss, with all the authorities agents of the kind usually have; and the appointee's acts, within the scope of the

customary authorities, will bind the principal unless he imposed restrictions which were known to the party dealt with. All the implied powers attributed by law to an agent, whether as necessary to the efficient discharge of his main duty, or as habitually exercised by persons discharging such a duty, have the effect of authorities actually conferred, though in fact they were not. If a man, without right, assumes to act for another, the act will be attributed to and affect the person represented if he acquiesces in and adopts it; and this whether the actor was devoid of any authority, or went beyond an authority he had. And, by the law of estoppel, a man may be bound by an unauthorized and unratified act. This consequence ensues when the conduct of the represented party induced some one to trust the pretending agent's assumed authority in matters which would entail a loss on the trusting party, if the one represented were permitted to deny responsibility. An estoppel may be raised because the supposed principal intentionally held the actor out to the public as an agent possessed of the authority he assumed; or permitted the actor to hold himself out in that way; or, by negligent conduct, created a false impression respecting the actor's authority; or negligently failed to correct such an impression created by the actor himself, when the principal ought, in reason, to have known it was likely to entrap some one. The essence of the estoppel is that the party asserting the agency was deceived by the conduct of the party against whom it is asserted; and though fraud may be an ingredient of the case, it is not essential. The estoppel may be allowed on the score of negligent fault, on the principle that where one of two innocent persons must suffer loss, the loss will be visited on him whose conduct brought about the situation. Of course, if a man presents some one to the public as his agent, whom he in fact has not appointed, and on that score afterwards denies responsibility for the pretended agent's acts,

the defense is highly fraudulent; as it is, too, if a man denies responsibility after advisedly permitting another to represent him, when no appointment had been made, or beyond the scope of the appointment. That a man knew what was done in his name by another may be established by direct evidence, or by proof that it was done in a manner to warrant the inference that the party represented knew of it. 2 Herman Estoppel, p. 1207. We believe these are all the predicaments in which a person is liable, by the law of agency, for the acts of another. They have been stated in this elementary form for the purpose of ascertaining if any of them makes Van Frank answerable for the price of plaintiff's goods. Some of them may be excluded from further consideration; for it is obvious that they are inapplicable to the facts in evidence. The only agency it is certain Dunlop held was the management of the beer business. But to accomplish the object of that agency, it was not necessary for him to buy whiskey. Neither did the usage of affairs give him the right to purchase whiskey in quantities on the defendant's credit, as an authority commonly incident to such a business. The defendant was not to be held liable, therefore, because of any implied powers in Dunlop, and the court below properly omitted that hypothesis in instructing the jury.

Granting, for the moment, that Dunlop's purchases from plaintiffs were unknown to the defendant when made, and were never in any way ratified, we will inquire whether the defendant is bound to pay for them because his conduct or behavior estops him from denying Dunlop's authority. We may supplement what is said above in regard to the power of a pretending agent, or a true agent acting beyond his authority, to bind the party he assumes to represent, by stating the law of such a contingency in a different form and as follows: The principal will be bound when the person dealt with had the right, in view of all the facts known to him, to be

lieve he was dealing with an actual agent about a matter within the scope of the latter's authority. Heffernan v. Boettler, 87 Mo. App. 317; Walsh v. Ins. Co., 73 N. Y. 1; Ruggles v. Ins. Co., 114 N. Y. 215; Askel v. Starbird, 152 Mass. 120. That is to say when a plaintiff's case hinges on an apparent, instead of a real authority, he must show that the defendant's conduct, whether it was so intended or not, was adapted to and did mislead the plaintiff into believing the apparent authority was real, and, so believing, to rely on it.

Our examination of the conduct of Van Frank, for the purpose of detecting acts which will estop-him to deny the right of Dunlop to buy the liquors in controversy in the former's name and on his credit, has disclosed no fact to which the plaintiffs can appeal for an estoppel, except those we will immediately mention.

Dunlop said he had authority; but his declarations to that effect were hearsay and incompetent; as there was no proof that defendant knew of them and a man is not to be affected by someone's unknown assumption of the character of his agent. Diel v. Railroad, 37 Mo. App. 454; Bank of Commerce v. Morris, 125 Mo. 343. Sugg was permitted to testify as to what Dunlop told him regarding the alleged agency; but the evidence should have been excluded. It was proper for him to testify that the goods were sold on the defendant's credit, and on the supposition that Dunlop ordered them by right, for the purpose of showing to whom the plaintiffs were willing to sell and believed they were selling. To prove Dunlop's right or plaintiffs' grounds for believing in it, his declarations were inadmissible. They were not only admitted, but a requested instruction that the jury should disregard them in determining the issue of agency was refused. If it was necessary to let Sugg tell what Dunlop said to him, in order to show to whom the plaintiff's looked for payment when they sold the goods, the effect of the statement should have been con-

trolled by advising the jury that they should not be considered for any other purpose.

No influence can be attributed to the city and the federal licenses standing in Van Frank's name. Sugg never saw the city license, and had already sold two bills of goods in June and July, before the government license was issued. Defendant can not be estopped to deny the agency by such incidents. The essence of any equitable estoppel is a mistaken belief of facts, engendered by another person's misconduct; and an estoppel of that character is usually allowed in cases like this, when a man held another out, or knowingly permitted another to hold himself out, as an agent; or where there were previous dealings of a sort to produce an impression that the relation of principal and agent existed and that the agent's authority covered the controverted act. One must not stand by and permit a man to contract for him or he will be obligated. The principle of that rule of law is sound; but its application to a controversy depends on the facts proven; and that the licenses were in the defendant's name is a fact inadequate to estop the defendant from denying Dunlop's agency. For an enunciation of the law on this subject, consistent with what we have said, we refer the reader to 2 Herman, Estoppel, secs. 944 to 947, inclusive, and the cases cited. Suppose Van Frank knew the licenses were in his name; was he thereby warned that Dunlop would assume, without authority, to buy large quantities of whisky on his (defendant's) credit, or that anybody would be entrapped by the circumstance of the licenses, into taking Dunlop's agency for granted, when by an easy inquiry the truth could be indubitably ascertained? Sugg's only excuse for saying nothing to the defendant about the purchases, or Dunlop's agency, is that every wholesale house has a buyer and he felt that he had no business with anyone but the buyer, Dunlop, thus begging the question at issue; which is as to whether Dunlop

had been appointed buyer by Van Frank, or falsely said he had.

The shipping tags on the barrels of whiskey in the ware-room bore Van Frank's name, thus showing the whiskey had been consigned to him, and stress is laid on the circumstance.    We may allow that it was for the jury to say whether the defendant noticed the tags. But Sugg did not pretend he was induced to sell any of the goods in controversy by defendant's opportunity to see his name on the whiskey barrels.   He must have sold some of the whiskey before the defendant had an opportunity to do so; for they were on barrels containing plaintiff's goods.    No circumstance can work an estoppel which the party claiming the estoppel was not misled by and did not rely on; and on such an issue he must bring forward proof.  There is no proof that Sugg's sales were influenced by observing that the defendant had an opportunity to read his name on barrels of whiskey, and said nothing about the matter.   The argument for an estoppel on this ground is untenable.

The remaining fact urged to estop Van Frank, was his behavior when he got the telegram; and while, to our minds, the incident is inconclusive, it was probably evidence for the jury on the issue of estoppel.   But all the goods, except the bill of December 6th, had been sold prior to that occurrence; which bears therefore, only on the subsequent sale of December 6th.

The fact that the licenses and labels were in the defendant's name, the testimony that the goods were billed to him and letters written to him about them, that he was frequently in  the room where the liquors were, and other circumstances in proof, while they do not preclude the defendant from denying Dunlop's agency, inasmuch as the plaintiffs did not rely on  them, have a tendency to prove Dunlop was authorized in advance to use defendant's credit, or that his doing so was ratified by defendant's acquiesence after knowledge of the fact. If the defendant learned that Dunlop had bought whis-

key in his name and raised no objection, but kept the goods, he adopted and ratified the purchases. Original authority or subsequent ratification may be shown by direct or indirect evidence; that is, by positive testimony or by relevant circumstances. And while the circumstances relied on to create an agency by estoppel must be proven to have been known to and relied on by the party asserting the estoppel, this is not the rule when they are counted on to establish actual authority or ratification; for then the essence of the matter is the intention of the party to be charged, to authorize or abide by what was done; not that the third party believed, on sufficient grounds, that it had been authorized. Bonner v. Linsenby, 86 Mo. App. 666; Heffernan v. Boettler, supra. It was not positively shown that Van Frank knew in advance the liquors were to be bought on his credit; or that he knew they had been, until he was first sued. But it was a fair question for the jury whether he did or not, if we take account of the fact that he lived at the hotel, was frequently about the ware-room, must have seen the large quantity of whiskey in there, knew of his son-in-law's recent failure in business and total insolvency, and that the wholesale license was before his eyes. All those things go to prove he either authorized Dunlop to make the purchases in question, or acquiesced in them after they were made.

The court admitted in evidence the files of an action by Van Frank to recover the price of some beer, sold by Dunlop, as agent, against John H. Cooper, who conducted a bar in Cape Girardeau. The purpose of this evidence was, apparently to show that Van Frank recognized Dunlop's agency; but as the suit related solely to a sale of beer, and as Dunlop's agency in the beer business was admitted, we think those papers should have been excluded. The deposition of Greame McGowan was admitted, over the objection of the defendant, but afterwards excluded. Some parts of it seem to

Hackett v. Van Frank.

be competent, while others are not, and the incompetent parts may well be excluded on a second trial before they are read to the jury.   We refer to McGowan's statement that the goods in controversy were sold to Van Frank; which was evidently hearsay, as the witness had no knowledge of the facts except as he learned them from Sugg.

The case should be submitted to the jury to decide these issues.   First, whether Dunlop had authority to make the purchases in Van Frank's name.   If he had actual authority, the liability of the defendant follows without reference to any other issue.   Second, whether, if he did not have authority at the time they were made, the defendant afterwards learned they had been made in his name and acquiesced in Dunlop's action, thereby ratifying it.   In either of those two contingencies the jury are not concerned with the question of estoppel. Third, if Dunlop's acts are found to have been neither authorized nor ratified by the defendant, whether the latter's behavior when he got the telegram induced Sugg to believe Dunlop had acted with authority and so believing, to make the sale on December 6th.   We are thus explicit because this is a case in which there is much danger of an unjust result, unless it is tried cautiously and the jury's attention drawn directly to the facts by close instructions.   Abstract announcements of legal principles should be avoided.

The circumstance of Van Frank's relationship to Dunlop and the latter's admitted agency in respect to the beer business, were adapted to suggest a wider agency; though the defendant may have been innocent of creating it, or doing anything to inspire a belief that he had.   On the other hand, it was possible for the defendant to present a plausible but false theory that he knew nothing of Dunlop's conduct when he, in fact, knew and had authorized it.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.