[No. 10917.   Department Two.   September 24, 1913.]

D. H. PARKER, *Respondent*, v. ADVANCE THRESHER COMPANY
et al., *Appellants*.[1]

PRINCIPAL AND AGENT — AUTHORITY — TERMINATION — NOTICE TO
THIRD PERSONS—QUESTION FOR JURY.   Where a threshing machine
was purchased of the general agent of the manufacturer, and after
the first season returned for storage to the agent, who removed part
of the machine to use on another, and subsequently delivered it to
the purchaser in a defective condition, after expiration of its con-
tract of agency, whether the agency was terminated, as to the pur-
chaser, is a question for the jury, where the purchaser testified that
he had no notice thereof; in view of the rule that a general agency
is presumed to continue, as to third persons dealing with it, until
notice of revocation.

SAME—SCOPE OF AUTHORITY.   The duty of replacing a missing cap
upon the cylinder of a threshing machine, removed after it was left
with the general agent for storage, is within the scope of the agent's
employment, where the agent was expected to deliver machines in
storage to the parties calling for them.

SALES—CONTRACTS—MODIFICATION—MERGER.   A contract for the
sale of a threshing machine, sold to plaintiff and another, is super-
seded where, after the first season, plaintiff's partner being in de-
fault, the agent obtained possession, and secured the interest of the
partner, and the matter was adjusted by the execution of a new con-
tract of sale to the plaintiff alone and the taking up of the old notes
and the execution of new notes by the plaintiff; the interest of the
partner being thereby eliminated, and the rights of the parties con-
trolled by the new contract.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.   The
question of the contributory negligence of the plaintiff, injured while
standing upon the cover of the cylinder of a threshing machine, is
for the jury, where the evidence of the defendant tended to show
that he voluntarily chose an unsafe method of performing the work
upon which he was engaged, and the evidence of the plaintiff showed
that he was performing it in the only practical way.

Appeal from a judgment of the superior court for Walla
Walla county, Brents, J., entered April 17, 1912, upon the
verdict of a jury rendered in favor of the plaintiff, in an ac-

[1]Reported in 135 Pac. 229.

tion for personal injuries sustained through defects in a
machine sold by defendants.   Affirmed.

*Sharpstein & Sharpstein* and *John E. Winn*, for appellant
Advance Thresher Company.

*T. P. Gose* and *W. F. Crowe*, for appellant Walla Walla
Iron Works.

*John C. Hurspool*, for respondent.

MAIN, J.—This action was brought for the purpose of re-
covering damages for personal injuries.   The facts, so far
as necessary to an understanding of the questions here to be
determined, are substantially as follows:  On June 30, 1910,
the Walla Walla Iron Works, as the agent of the Advance
Thresher Company, by written contract, sold to the plain-
tiff and one George W. Daniel an Advance separator.   The
contract provided for an initial payment, and three subse-
quent payments falling due October 1, 1910, October 1, 1911,
and October 1, 1912, which were to be evidenced by promis-
sory notes secured by a chattel mortgage upon the machine.
Thereafter, the separator was delivered and the notes and
mortgage executed.   The separator was used during the
season of 1910 by the plaintiff and Daniel.   In the fall of
that year, it was returned to the Walla Walla Iron Works
for storage.   After being placed in storage, it appears that
the plaintiff desired to remove the machine, or a part thereof,
to his farm; but owing to the fact that he and Daniel were
owing the Walla Walla Iron Works for repairs, permission
to remove it was denied.   The plaintiff then desired to remove
the drive belt, but this permission was refused him by the
president and manager of the iron works unless he should
get permission from one Cowan, the general agent of the
thresher company.   Subsequently this permission was ob-
tained.   At this time the plaintiff had met his obligations to
the thresher company, but Daniel was in default and appar-
ently had neither the inclination nor the ability to make his

portion of the payments. Some discussion took place between the plaintiff and the president of the iron works and Cowan as to, how the situation should be adjusted. On November 16, 1910, the plaintiff and the thresher company, through Cowan, entered into a written contract whereby the plaintiff was to pay the thresher company certain small payments prior to the 15th day of May, 1911; and when those payments were completed, a new contract and notes were to be made out and signed by the plaintiff, he being released from the notes given together with Daniel. The payments, as required by the contract of November 16th, having been made, a new contract of sale was made between the plaintiff and the thresher company, dated May 22, 1911. This contract was similar to the first contract, which was made on the 30th of June, 1910. It provided for notes and mortgage and that the payment of the notes should fall due on October 1, 1911, October 1, 1912, and October 1, 1913. The notes and mortgage were executed by the plaintiff.

There was no change in the possession of the separator until about the first of August, 1911, when the plaintiff took it away. When the plaintiff went to get the separator, he was informed that the cap over the cylinder was gone. The plaintiff then, as he testifies, saw Broughton, the manager of the iron works, who said he had taken the cover for another advance separator and would have a cover put on. An employee of the iron works put on a new cap in the absence of the plaintiff. This cap was not lined with sheet iron or steel, and after being used about eight days, became so worn and thin that, when the plaintiff stepped on it while the machine was in operation, it gave way, letting his foot into the rapidly revolving cylinder, with the result that a portion of one foot was cut off. The negligence claimed is the failure to line the cylinder cap with sheet iron or steel to prevent it wearing as the grain would beat against it when passing through the cylinder.

The written contract by which the iron works was consti-

tuted the agent of the thresher company for the season of 1910 terminated, according to its terms, on November 1, 1910. Subsequently another agent was appointed and the iron works became a subagent. During the years 1910 and 1911, the thresher company's machinery was stored with the iron works. The plaintiff had no notice or knowledge of the termination of the agency. The facts as above stated are briefly as contended for by the plaintiff.

The defendant thresher company contends that, at the time the cap which broke and caused the injury was put on by the iron works, the iron works was not then its agent, and consequently, it is not liable.

The iron works denied negligence on its part and contends that the plaintiff was guilty of contributory negligence which was the proximate cause of the injury. The alleged contributory negligence consisted in the plaintiff's stepping upon the cap over the cylinder while oiling the machine. It is claimed that he might either have done the oiling by stepping upon a cross-timber, or by standing upon the ground. Upon the question as to where was the proper place for him to be while oiling the machine, the evidence is conflicting.

The cause was tried to the court and a jury, and a verdict for the plaintiff returned in the sum of $3,500. At appropriate times on the part of the thresher company, motions for nonsuit, for a directed verdict, for judgment notwithstanding the verdict, and for a new trial, were made and overruled. On behalf of the iron works, a motion for new trial was made and overruled. Judgment was entered upon the verdict. Both defendants appeal.

The questions which are chiefly material are: First, was the Walla Walla Iron Works the agent of the Advance Thresher Company at the time the cap was supplied? Second, if it was the agent, then was the supplying of the cap within the scope of its agency? Third, what was the effect of the contract of May 22, 1911? Fourth, was the plaintiff

guilty of contributory negligence?   Fifth, was there error in the instructions?

I.   It must first be determined whether, at the time the Walla Walla Iron Works put the cap over the cylinder, it was the agent of the Advance Thresher Company.   It is not questioned that, during the year 1910, such agency existed by virtue of a written contract which, however, as specified in the contract, was to expire on November 1, 1910.   The respondent takes the position that the agency once established, and he having dealt with the agent, such agency, as to him, will be presumed to continue until he has notice, either express or implied, of its termination.   The rule is that where a general agency is once established, as to third persons who have dealt with the agent, it will be presumed to continue until there is notice of revocation.   In 31 Cyc. 1639, the rule is stated in this language:

"If a general agency for any purpose be shown the presumption as to third persons previously dealing with the agent is that it continues until notice of revocation."

Numerous other authorities might be cited in support of this proposition, but it is so well established that the cumulative citation of authority here would add nothing to its force.   The undisputed fact being that the respondent, in his first transaction, purchased the machine from the iron works as the agent of the thresher company, such agency as to him would continue in the absence of notice of its termination. The respondent testified that he had neither notice nor knowledge that the agency had been terminated.   The facts and circumstances which surround the entire transaction subsequent to the time specified in the written contract for the termination of the agency are not such as to enable us to say, as a matter of law, that they would impute knowledge to the respondent that the agency had been terminated.   The question then became one of fact for the jury under proper instructions from the court.

II.    The agency being presumed to exist as to the re-
spondent, and the jury having evidently found the fact to be
that he neither had notice, express or implied, of its termina-
tion, the question arises whether or not the act of placing
the cap over the cylinder was within the scope of the agency.
The agency once established, it would carry with it as an in-
cident the authority to do whatever is necessary and proper
for accomplishing the purposes for which the agency was
created.    *Birge-Forbes Co. v. St. Louis & S. F. R. Co.*, 53
Tex. Civ. App. 55, 115 S. W. 333; *Cameron & Co. v. Black-
well*, 53 Tex. Civ. App. 414, 115 S. W. 856; *Murphy v.
Knights of Columbus Bldg. Co.*, 155 Mo. App. 649, 135 S.
W. 446; *Hackett v. Van Frank*, 105 Mo. App. 384, 79 S.
W. 1013.    Assuming, then, that the agency existed, and that
in the performance of that agency the machine was to be de-
livered, it would seem that the duty of replacing a missing
cap upon the cylinder would come within the scope of the
agency.    The witness Cowan, who had been traveling agent
or representative of the thresher company, testified relative
to the scope of the agency of the iron works as follows:

"Q.    And when you sell machines and they are in storage
down at the Walla Walla Iron Works you expect the Walla
Walla Iron Works to deliver them when parties call for them?
A.    If they are there, yes.    Q.    And you expect them to do
whatever is necessary to deliver them?    A.    Why, I suppose
so, yes."

It can hardly be doubted that, where, at the time the con-
tract of sale is made, the machine was in storage with the
agent of the company and was in a completed condition, if,
when it came to be delivered to the purchaser, some part
thereof was missing, it would be within the scope of the
agent's power to supply the missing part.

III.    It is contended, however, that the rules as to agency
would not apply to this case for the reason that the machine
had been sold to Daniel and Parker, and had been placed in
storage by them with the iron works.    There would be much

force to this argument were it not for the contract of sale made on the 22d day of May, 1911. By that contract the thresher company undertook to make a sale anew to the respondent of the same machine which it had previously sold to him and Daniel. It is claimed that the respondent's interest under the original contract was never surrendered to the thresher company, and that it, after securing the surrender of Daniel's interest, held the property as a tenant in common with respondent. Just what the legal status of the parties with reference to the property was at the time the contract of May 22, 1911, was made, it is not necessary to determine. On this date a new contract was made, the effect of which was to discharge the former one. It was based upon a new consideration, and there is nothing upon its face that would indicate that it was intended to be supplemental.

Where a subsequent contract is made covering the entire subject-matter of a previous one, and nothing is shown to indicate that it was intended to be an extension thereof, the original contract is superseded, and the rights of the parties become fixed in accordance with the terms of the second contract. In *Leffel & Co. v. Piatt*, 126 Mich. 443, 86 N. W. 65, a contract had been made between the parties to that cause on the 6th of May, 1897, relative to the sale of a quantity of machinery. Subsequently, and on September 8, 1897, a second contract of sale for the identical machinery named in the original contract was drawn up and signed by the parties to the original contract. Under the first contract, the machinery had been delivered to the purchaser and notes given for the payments as they became due. Under the second contract there were terms not embodied in the original and some of the terms of the original are not found in the second. The machinery not being paid for, suit was brought upon the second contract. A right secured to the defendant by the first contract was pleaded in defense. It was said:

"We think it altogether clear that the contract of date September 8, 1897, superseded the first contract between the

parties. There is nothing on its face to indicate that it was intended to be supplemental. It covered all the property mentioned in the first,—contained an additional provision, it is true, and, in the body of the instrument, omitted any warranty. The property had at this time, however, been delivered, and a question had arisen as to its sufficiency. What more natural than that, in place of relying upon a guaranty, the defendant should insist on an opportunity to make a trial? This he did do. The result was the addendum indorsed on the agreement. The entire subject-matter of the first contract was covered, and when this is apparent it is held that a second written agreement supersedes the first, as matter of law, and that it is a question for the court."

In *Poland Paper Co. v. Foote & Davies Co.*, 118 Ga. 458, 45 S. E. 374, the plaintiffs had purchased paper which was to be delivered at a certain time. The paper was not delivered at the time mentioned in the contract. Sometime later, when the paper was shipped to the plaintiff, a dispute arose between the parties, and the defendant then insisted that the plaintiff should pay cash instead of being allowed the terms of credit provided for in the original contract. The plaintiff being anxious to secure the paper, paid the cash and thereafter brought action for damages for the original delay. Speaking of the effect of the second contract upon the first, the court said:

"But if the parties so intend, a new agreement may operate as a discharge of the old contract, and such discharge will be effected, even if nothing is said as to such being the intention, where the new agreement is founded on a new consideration. . . . There being no reservation of the right to sue for damages for the delay in delivery, the full performance of the new agreement by the seller, and the acceptance by the buyer operated as a discharge of the prior undertaking."

Applying the rule of these cases to the facts in the present case, it would appear that the contract of May 22, 1911, superseded the prior contract, and the rights of the parties must be determined from it. The effect is the same as though

this were the only contract between the parties. The question as to the legal status of the parties under the original contract, or of their respective rights in the machinery at the time of the execution of the contract of May 22, 1911, is not now open for consideration.

IV. On the question of contributory negligence, if the evidence of the appellants correctly presents the situation, then the respondent at the time of the injury voluntarily chose a dangerous way of performing the particular work upon which he was engaged, when a safe way was open to him. If the evidence introduced on behalf of the respondent is to be believed, he was performing the particular work at the time of the injury in the only practical way. The question then as to whether or not the respondent was guilty of contributory negligence was one for the jury.

V. Numerous errors are assigned as to the instructions given to the jury. But from a careful reading of all the instructions given, we think that they contain nothing which is prejudicial error.

The judgment will therefore be affirmed.

CROW, C. J., ELLIS, and FULLERTON, JJ., concur.