[No. 3938–2–III.   Division Three.   December 30, 1981.]

BETTE J. BERGIN, *Respondent,* v. GREG THOMAS,
ET AL, *Defendants,* GEORGE THOMAS,
ET AL, *Appellants.*

*Thomas M. Geiger* and *Mark Hanley,* for appellants.

*Michael D. Finney* and *Walters, Whitaker, Finney &
Falk,* for respondent.

ROE, J.—George and Don Eleanor Thomas owned a tavern located on some property in Grand Coulee, Washington. Another building, located on the same property, was vacant until 1972 when the Thomases opened "The Robe", a retail clothing store. At first Mrs. Thomas ran the store, helped by her son Greg and at times his wife Shelly. Eventually, Greg was manager. In 1972, to facilitate business as a retail clothing outlet, the senior Thomases contacted Dun & Bradstreet, Inc. to solicit a favorable credit rating to induce suppliers and distributors to extend credit. Both the tavern and the store were listed as assets of the senior Thomases.

On January 1, 1976, they sold the clothing business to their son Greg and his wife. New accounts were set up by the accountant and tax authorities were notified. Mrs. George Thomas (the senior) testified she may have let the existing creditors know of the change. Dun & Bradstreet, Inc. was not notified. Greg and Shelly Thomas (the juniors) continued to operate The Robe and opened an additional store in Union Gap, Washington. In 1977, approximately 16 months following transfer of ownership, son Greg started dealing with, and placed orders through, salesmen of Garland and Siegel, distributors. Greg informed these salesmen he owned The Robe.[1] For credit–related reasons, the sales-

---

[1]Although the trial court did not make a specific finding that Greg had told the plaintiff's representatives that he, and not his father, now owned the store, his testimony to that effect was not controverted. There is no showing in the record the trial court refused to make such a finding. *See Simpson v. Kelso School Dist. 403*, 20 Wn. App. 545, 581 P.2d 1065 (1978). The trial court in its oral opinion stated:

> I think he [Greg] recognized the importance of it [Dun & Bradstreet report] and certainly they discussed it when he mentioned that the salesman told him not to let the home office know about the difference [in ownership] in the D & B.

We may use the trial court's statement in the oral opinion to clarify its findings. *Ruskin Fisher & Assocs., Inc. v. Mt. Spokane Chair Lift, Inc.*, 14 Wn. App. 330,

men suggested he not disclose this fact to their companies. After a series of unfortunate events, Greg became insolvent and went through bankruptcy. Garland and Siegel assigned their accounts to plaintiff Bette J. Bergin. At trial the assignors, through their agents, indicated in depositions on written questions their dependence on a 1975 Dun & Bradstreet, Inc. report for extending credit. This report contained a disclaimer by Dun & Bradstreet, Inc. specifically indicating there was no verification of the data, no guaranty of accuracy, or timeliness.

Plaintiff sued Greg and Shelly Thomas in Yakima County. The complaint was amended to include his parents, George and Don Eleanor Thomas, as additional defendants. A default was entered against Greg Thomas. At trial Greg's parents were found to be liable and judgment entered on theories of ostensible agency and comparative innocence. The Thomases appeal. We reverse.

■ The principle of apparent agency is explained in *Lumber Mart Co. v. Buchanan,* 69 Wn.2d 658, 419 P.2d 1002 (1966), relied upon by the trial court. Apparent or ostensible authority of an agent can be inferred only from the acts and conduct of the principal.

> [T]he principal is bound by the act of his agent when he has placed the agent in such position that persons of ordinary prudence, reasonably conversant with business usages and customs, are thereby led to believe and assume that the agent is possessed of certain authority, and to deal with him in reliance upon such assumption.

*Lumber Mart Co. v. Buchanan, supra* at 662. Here, the conduct which Bergin asserts to show the agency is the failure of the Thomases to notify Dun & Bradstreet, Inc. of the sale. However, in *Lumber Mart* the agent exceeded his actual authority in various transactions with a third party where there were previous dealings and the principal had knowledge of the acts of the agent.

In *Parker v. Advance Thresher Co.,* 75 Wash. 505, 509,

332, 540 P.2d 1393 (1975); *In re Marriage of McKinney,* 14 Wn. App. 921, 923–24, 546 P.2d 456 (1976).

135 P. 229 (1913), cited by the trial court and relied on by the plaintiff, the court held:

> The rule is that where a general agency is once established, as to *third persons who have dealt with the agent,* it will be presumed to continue until there is notice of revocation. In 31 Cyc. 1639, the rule is stated in this language:
>> "If a general agency for any purpose be shown the presumption as to third persons *previously dealing with the agent* is that it continues until notice of revocation."

(Italics ours.) These cases may be distinguished and held inapplicable because of the trial court's finding that the plaintiff's assignors *started* dealing with the store in 1977, extending credit to The Robe. This was after the sale to the son, Greg Thomas.

There is no evidence that Garland and Siegel had any indication or knowledge of any agency relationship between the Thomases and their son when they owned the business. The 2–year–old Dun & Bradstreet, Inc. report listed George as the owner but made no mention of Greg as manager or in any capacity. If an agency relationship is to be found, the burden of proving or establishing the agency is on the one who asserts it. *Lamb v. General Assocs., Inc.,* 60 Wn.2d 623, 374 P.2d 677 (1962). If Garland and Siegel desire to rely on an agency relationship, then first they must prove one existed. If these companies had dealt with The Robe before it was sold to Greg, the determination of any agency or ostensible agency might be different.

> We have repeatedly held that a prerequisite of an agency is control of the agent by the principal. . . .
> . . . agency is a consensual relation between two persons created by law by which a principal has a right to control the conduct of the agent and the agent has a power to affect the legal relations of the principal. . . .
> Consent and control are the essential elements of an agency.

*Moss v. Vadman,* 77 Wn.2d 396, 402–03, 463 P.2d 159 (1969). Here, there was no control or consent. As stated in *Lamb,* and reiterated in *Lumber Mart,*

Facts and circumstances are sufficient to establish apparent authority only when a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry.

*Lamb v. General Assocs., Inc., supra* at 627–28. Here, the law again puts the burden on the parties seeking to assert the agency and makes them act with ordinary prudence in ordinary business practices. An important element of this case is the reliance on the Dun & Bradstreet, Inc. report by the suppliers. In 1977 when the Dun & Bradstreet, Inc. report was used by the suppliers to evaluate The Robe, they used a 1975 report that contained the following disclaimer:

This report, furnished pursuant to contract for the exclusive use of the subscriber as *one factor* to consider in connection with credit, insurance, marketing or other business decisions, contains information compiled from sources which Dun & Bradstreet, Inc., *does not control* and whose information, unless otherwise indicated in this report, *has not been verified.* In furnishing this report, Dun & Bradstreet, Inc. in no way assumes any part of the user's business risk, does not guarantee the *accuracy, completeness, or timeliness* of the information provided, and shall not be liable for any loss or injury whatever resulting from contingencies beyond its control or from negligence.

(Italics ours.) It cannot be said that the suppliers used good business judgment when relying solely on the outdated Dun & Bradstreet, Inc. report. In fact, in their interrogatories, they admitted usually using sources other than Dun & Bradstreet, Inc. as well. They should have inquired further. Dun & Bradstreet, Inc. reports are not forever.

Even if an ostensible agency were found, Garland and Siegel are charged with notice that Greg owned the store. Greg testified he told the salesmen from Garland and

Siegel he owned The Robe.[2] This is notice if the information should be imputed to the principal. *Busk v. Hoard,* 65 Wn.2d 126, 396 P.2d 171 (1964). Assignee Bergin asserts under circumstances such as these, where it was to the advantage of the suppliers' agents as well as Greg to conceal the true ownership, the knowledge of the salesmen would not be imputed to the suppliers. *Lewis v. Bertero,* 198 Wash. 296, 88 P.2d 433 (1939). This would be true if it were not for the fact the salesmen were the only representatives and contact Greg had with the suppliers when ordering. The knowledge of the agent should be imputed to the principal. *Higgins v. Daniel,* 5 Wn.2d 134, 139, 105 P.2d 24 (1940).

■ The trial court also based its decision on a theory of comparative innocence which may be stated as, *i.e.,* where one of two innocent parties must suffer from the wrongful act of another, the loss should fall on the one who created the circumstances which enabled the third party to perpetrate the wrong. *Hutson v. Walker,* 37 Wn.2d 12, 18, 221 P.2d 506 (1950); *Eatonville State Bank v. Marshall,* 170 Wash. 503, 505, 17 P.2d 14 (1932). Neither of these parties are "innocents". Either could have prevented the loss, the Thomases by notice to Dun & Bradstreet, Inc., the suppliers by using competent business practices which required further inquiry. However, once the court finds no agency existed, or it imputes knowledge of the sale to the suppliers, the doctrine of comparative innocence fails. The Thomases did not induce or mislead the suppliers into believing Greg was their agent. The suppliers dealt with Greg at their own risk. *Dun v. City Nat'l Bank,* 58 F. 174 (2d Cir. 1893). In *Dun,* at page 179 the court said:

> They seek to apply to this case the principle that, where one of two innocent persons must suffer for the wrongful act of a third person, the principal who has placed the agent in the position of trust should suffer, rather than the stranger. But here the plaintiff was no stranger.

---

[2]See footnote 1.

Here, Garland and Siegel were not strangers; they had dealt with Greg in the original transaction. Using competent business practices, as they are required to do, Garland and Siegel could have known Greg was the owner of The Robe. His deception is not imputable to his parents.

Due to our disposition of the case, we need not consider the other issues raised by the appellants.

The judgment of the trial court is reversed.

McINTURFF, C.J., and MUNSON, J., concur.

Reconsideration denied January 26, 1982.