CITIZENS BANK OF HUTCHINSON, MINNESOTA, Appellant, v. TOWNSHIP OF CRANE CREEK, COUNTY OF MOUNTRAIL, STATE OF NORTH DAKOTA, a Public Corporation, Respondent.

(231 N. W. 281.)

Opinion filed May 2, 1930. Rehearing denied June 30, 1930.

*R. F. Rinker,* for appellant.

*F. F. Wyckoff,* for respondent.

BURKE, Ch. J. This is an action to recover on warrants issued by the defendant township, in payment for a road grader.

As a defense, the answer alleges, that "the warrants were issued upon the representation that the road grader, and each and every part thereof, was constructed of first class material and was in all respects so constructed that it would if properly operated do the work intended for it to do in a good and first class manner; and it further agrees and warrants that the said machine company would place the same in

a good and first class operating condition upon the roads of said defendant township, that said grader was not constructed of good or first class material that it would not do the work that it was intended to do, that its several parts did continually become broken, could not be made to operate and was on the account of faulty construction and material entirely worthless." It is the further contention of the defendant that there was a rescission of the contract, but we are of the opinion that rescission is not sufficiently alleged in the answer nor proven in the evidence, and that the only question involved is the question of warranty and the breach thereof.

On the fifth day of August, 1920, the defendant gave to the plaintiff a written order for one Monarch Traction reversible machine, 12 foot blade, which order contained a warranty as follows:

"Warranty: The machine purchased on this blank is guaranteed to be made in a thorough, workmanlike manner throughout, from the best of material and to be in every particular as represented in the Printed Matter of the Chamberlain Road Machine Co.

Any and all parts or pieces which may be broken in ordinary road work through defective material or imperfect workmanship, are to be replaced during the year of purchase free of charge F. O. B. Hutchinson, Minnesota.

Further, to stand the strain of a traction engine in ordinary soil conditions.

To make new roads in baked clay, gumbo or prairie sod.

To make and repair roads in soil that can be handled by a plow.

To be simple and thoroughly constructed, on mechanical principles.

To cut off high, hard and grassy shoulders and bring same into the center.

To be a successful machine for cleaning out old and making new ditches.

To make one mile of good turnpike road in 10 hours' work. (Road 24 feet wide from ditch to ditch.)

To make 3 to 5 miles of open ditch per day, according to condition of the ground, 24 inches deep and 3 to 5 feet wide.

To carry earth forward for short distances.

To level and true up rough and rutty roads.

To effect a saving of 50 to 200 per cent in the cost of building and repairing roads over the old methods. (Scrapers, Drags and Wheelers.)                Chamberlain Road Machine Co.

                         Hutchinson, Minnesota."

The grader was delivered the later part of September 1920. Mr. J. H. Chamberlain, secretary and treasurer of the Chamberlain Road Machine Co., the manufacturers, and Mr. C. H. Cady, its demonstrator, were present when there was a demonstration of the machine. It was operated on a stretch of road a mile long, and sometime in the afternoon, the large casting, known as a "circle," to which the blade of the grader is attached, and which can be moved in a circle so as to change the position of the blade, was broken. Mr. Cady, the demonstrator, turned the blade from end to end and continued to work the grader that afternoon and a part of the next day. Chamberlain left on the evening of the first day, but before he left he assured the defendant that a new "circle" would be furnished and the machine would be put in first class working order. After he left Mr. Cady, the demonstrator, found a note in the tool box addressed to him, in Mr. Chamberlain's handwriting, telling him to be sure and get the money for the grader before he left.

There was, according to the testimony, a great deal of stone on this road, and two men were put to digging them out on knolls along the road where they were the thickest, but according to the testimony, there were no more stones on this road than on the other roads in Crane Creek Township. Mr. Chamberlain testified that the breaking of the "circle" was not caused by the stone, but by a defect in the casting. His testimony is as follows: "this 'circle' is a crucible steel casting. It is 72 inches across, occasionally in pouring this steel into the sand form, the sand will come up, or what is known as blow bubbles, and it causes a defective casting. Sometimes it can be noticed with the naked eye, and again it can't, you have to take it out in the field before you find it is defective, and that happened to be the case with this casting."

On the day following the first attempt, and while the machine was broken, Cady who had been instructed to get the money, again made promises to restore the broken parts, put the machine in good running order, assuring the defendant that when so done the machine would

do the work for which it was intended; and the defendant claims, that relying on the representations made by Chamberlain and Cady, and while the machine was broken they issued and delivered to Cady the warrants sued on in the action and it is conceded that the machine was broken at the time the warrants were issued.

The plaintiff did send another "circle" which was put in the grader, and again the defendant attempted to use the machine, but the new "circle" and blade broke before they had gone a half mile. At a regular meeting of the board of Crane Creek Township on October 25, 1921, the clerk of the board was instructed to notify the Chamberlain Road Machine Company of the breaking of the "circle" and blade of the grader, and the clerk sent the following letter to the Chamberlain Road Machine Company, viz.:

"October 25, 1921.

"The grader purchased of you last fall at the test given it at that time the circle and blade were broken, and replaced by you, since the grader has not been used until now we started grading, and went about one half mile and broke the circle and blade again. Which we think plainly shows the machine is too light for this country, and unless you have more rigid circle to put in there, and also a stronger blade the grader is useless to us, and we don't feel like paying for something that is of no use for us."

This letter was never answered by the Chamberlain Road Machine Co., but in July 1922, the Chamberlain Road Machine Co. put in a new circle which, it is claimed, was of a newer type with ribs which made it stronger, but there is no evidence that they furnished a new blade. The defendant was not notified, but knew about the replacement of the "circle," but before that time had abandoned the grader and never used it afterwards. Mr. Chamberlain and Mr. Southerland, one of the supervisors of the defendant township, saw it at Sanish in 1929, and at that time the "circle" appeared in good condition, although the blade and other parts of the machine were broken, and there is no evidence to show that it had been used as a road grader after the last "circle" had been placed in the grader, or that it would do the work for which it was intended.

Mr. Chamberlain testified that they made a change in the grader in 1921, he said, "we had to design it a little different, rib it up, and make

it a little heavier, and it was this new type we sent out after the 'circle' broke the second time. In 1921, we increased the machine all the way through, made it heavier. We made a heavier machine, the trade demanded it, because the machine was increased in size all the way through." From this testimony it appears that in 1921, one year later, the Chamberlain Road Machine Co. made a larger, heavier, stronger machine than the one they sold to the defendant in 1920, and that the "circle" placed in the machine in July 1922, was of the new type.

It is the contention of the plaintiff that the defendant accepted the machine under the terms of the order signed August 5, 1920, when they issued the warrants; that it is provided in the order that, "if, after a fair and impartial trial, the machine does not do the work as warranted, Chamberlain Road Machine Co. to receive it back at the railroad station from which it was taken and cancel this contract. This contract embodies the entire understanding, is not subject to countermand after acceptance, and is not to be affected by a verbal agreement." An acceptance of the machine under this agreement is made dependent upon a fair and impartial trial, and if after a fair and impartial trial the machine does not do the work Chamberlain Road Machine Company agreed to receive it back at the railroad station. It is conceded that the circle and blade were broken while the machine was being demonstrated by an expert, furnished by the machine company. According to the evidence, it was not the work to which the machine was subjected that broke the "circle." Mr. Chamberlain, who was secretary and treasurer of the machine company, testified that there was a defect in the circle itself. There hadn't been a fair and impartial trial of the machine at the time the warrants in suit were given, or if they had been, then the machine failed on account of a defect in the circle. In either case the machine company had not complied with its contract. Chamberlain, himself, was there and was in no position to demand a settlement or an acceptance of the machine in its broken condition. By the terms of the written order the machine company was obliged to demonstrate the machine in a fair and impartial trial, and show to the defendant that it would do the work for which it was intended. The only demonstration given by the machine company proved that the machine was defective and did not comply with the war-

ranty. The machine company never did by a fair and impartial trial demonstrate that the machine complied with the warranties. The demonstration was a failure, the machine company could not enforce the contract with the defendant, and in order to get the defendant to keep the machine it agreed to replace all the defective parts, and to comply with all the warranties in every particular, and it was upon such conditions the township warrants were issued and delivered to the machine company. This agreement was made on the 20th of September, 1920, the machine company did not replace the circle or blade that year, but sometime in January 1921, they put in a new circle and a new blade both of which broke the first time the machine was operated and after it was driven only a half mile. The evidence does not show that this circle was defective like the first, in fact the grader was never used by the defendant after it broke down in 1921, and there is no evidence that it was ever used as a grader by anyone, no proof that the machine company ever replaced the broken blade, or that the machine would do the work for which it was intended. There was much carelessness and a lack of diligence on the part of the machine company and of the defendant. Carelessness on the part of the defendant in not promptly rescinding the contract, and carelessness and lack of diligence on the part of the machine company in not restoring defective parts in the machine promptly, and in not notifying the defendant of the replacement of defective parts as soon as possible so that the defendant could have had the use of the machine. The evidence does not show a rescission, but there is evidence that the machine was too light and defective for the work for which defendant purchased it, and for which it was intended. However, the proof offered to show that the machine was worthless was the wrong measure of value. The evidence is that "the machine was worth nothing in the condition in which it was after the breaking." It was incumbent upon the defendant to show that with the "circle" and blade replaced the machine was worthless for the purpose for which it was intended, and for which it was purchased.

The judgment of the district court is reversed, and a new trial ordered.

CHRISTIANSON, BIRDZELL, NUESSLE, and BURR, JJ., concur.