L. E. WOOD and C. E. Wood, Copartners as Wood Brothers, Respondents, v. ADVANCE RUMELY THRESHER COMPANY, a Corporation, Appellant.

(234 N. W. 517.)

Opinion filed January 2, 1931.  Rehearing denied February 3, 1931.

*Lawrence, Murphy, Fuller & Powers,* for appellant.

*McGee & Goss* and *I. H. Breaw,* for respondent.

BURKE, Ch. J.   This is an action upon an alleged breach of warranty in an order for machinery.

The trial judge made findings of fact and conclusions of law favorable to the plaintiff, and from a judgment entered thereon the defendant appeals.

In January, 1925, George Ranum an agent to solicit orders for the defendant company, procured from the plaintiff an order for a 20–35 tractor to be paid for in cash.   The order provides:

"This contract shall not be obligatory upon vendor until accepted by it at its head office, and no agreement collateral hereto shall be binding upon either party unless in writing hereupon or attached hereto, signed by the purchaser and accepted by the vendor at its head office."

On the 9th of February, Ranum's contract of agency was cancelled while he still had the order signed by plaintiff in his possession.   Plain-

tiff proved at the trial that it was familar with the terms of Ranum's contract of agency; that Mr. A. L. E. Wood looked it over and read it before giving the order. The contract of agency states specifically that, "the Company authorizes the second party to solicit and take orders on commission until October 1, 1925, unless this contract is sooner terminated, for such machinery, repairs and extras as it deals in. . . . He shall take all orders on the Company's printed 1925 order form in duplicate without alteration, at the Company's list prices on date of order containing all agreements and understandings with the purchaser, deliver one duplicate copy to him which second party shall read to and cause purchaser to understand at the time of execution, and promptly forward the other duplicate with his signed recommendation thereon to the branch house having jurisdiction, for transmittal to the Company's head office for acceptance or rejection, of which the Company shall be the sole judge; and the Company reserves the right to cancel, or refuse to fill any order it may have accepted, and shall not be liable for any commission or for damage on orders it cancels or refuses to fill. . . . This printed form which, without interlineation or change, embodies the entire contract between the parties, cannot be altered in any manner, except by instrument in writing, signed by the proper authority at the head office of the Company, and shall not be binding on the Company until accepted in writing by the Company at its head office."

After the cancellation of his contract of agency, Ranum who still had the order signed by the plaintiff in his possession and wanting to get the commission on the sale testified, that he went to Fargo, and had a conversation with A. G. Malmo branch manager of the defendant Company at that place. He said: "Mr. Malmo asked me if I didn't know some other dealer for the Rumely Company that I could send these orders in through, that they had given my territory to the dealer at Parshall, Doten and Thompson. I said, I could possibly send the order in through Mr. Ulrick at Van Hook. Mr. Malmo said that would be all right. When I got back home I took the Woods' order to Ulrick at Van Hook, and delivered it to him. He agreed to send an order in for the tractor to supply the Wood Brothers' order." Ranum gave the order signed by the plaintiff to Ulrick, but Ulrick

did not send it to the branch office for forwarding to the home office for acceptance, but did make out and sign an entirely different order.

The order signed by the plaintiff was an order for machinery, the order signed by Ulrich was a dealer's contract and order, and it was this order which was accepted and filled by the shipment of the tractor. When the tractor arrived at Parshall, Ranum took up the bill of lading through the First National Bank at Van Hook. The sight draft was for $1,553.83, the purchase price of the machine, the freight and to which Ranum added fifty dollars for commission; and plaintiff gave Ranum his check, "exhibit 1" for $1,603.86 which includes the purchase price, the freight and the added commission.

Ulrick receipted for the tractor to the Company, no receipt was signed by either Ranum or the Wood Brothers, no order signed by the Wood Brothers was ever sent to the branch office, or the home office of the defendant Company.

The branch office did not know that any tractor had been sold to the Wood Brothers, until they received a letter dated "August 7th" which gave the number of the tractor. The branch manager writing to Wood Brothers under the date of August 12th 1925, states: "In reply to your letter of the seventh we observe that your tractor is No. 122, and by referring to our files we find that this is evidently the tractor that we sold to our Van Hook dealer in March." On July the 18th 1925, a letter was written at the home office of the defendant stating: "We have your letter of the 14th in regard to the operation of your 20–35 oil pull tractor, and we find it difficult to discuss your complaint with you intelligently because of your failure to provide us with the shop number of your machine so as to enable us to locate the order on which it was purchased." It is clear from this record that there never was an order signed by the plaintiff forwarded to and accepted by the defendant, that the tractor was sold to Ulrick on a "dealer's contract and order" which was approved at the head office by the vice president of the company March 9, 1925, and which contained warranties to the dealer entirely different from those in the order signed by the plaintiff.

According to Ranum's testimony, Malmo told him that he could run the order through the agent at Parshall or Van Hook. He said: "I took the order to Ulrick at Van Hook and delivered it to him. He

agreed to send an order in for the tractor to supply the Wood Brothers' order." From this testimony it appears that Ulrick did not agree to send in the order signed by the plaintiff, but agreed to send *an order* in for the tractor *to supply the Wood Brothers' order*. This was an agreement between Ulrick and Ranum which was binding on neither the plaintiff nor the defendant. If the plaintiff had refused to accept the tractor he would not be liable, for there was no privity of contract between the plaintiff and Ranum, neither was there any privity of contract between the plaintiff and the defendant, and the plaintiff could not have been compelled to take the tractor, or to respond in damages. If the plaintiff's order had been forwarded to and approved at the head office at La Porte, Indiana, and the tractor shipped and delivered to plaintiff in pursuance of such order the defendant would be liable if there was a breach of the warranty; but Ulrick did not send the order and neither Ulrick nor Ranum had authority to deliver to the plaintiff for the defendant any tractor except upon an order which had been forwarded to and approved at the head office. The plaintiff knew this, as he had read the contract of agency between Ranum and the defendant and because the very order itself provides, that it shall not be binding upon the defendant until it is approved at the head office. Even if Ranum's contract of agency had not been canceled he would have no authority to bind the defendant in such a deal as it was only within the scope of his authority as an agent to solicit orders, forward the order for approval and deliver the machinery · shipped to fill such approved order.

"Where orders for machinery which were signed by buyer contain provisions showing mere proposal by buyer and making them subject to approval of seller at its office in another state, buyer was therefore bound to know when signing orders that they were not binding on the seller until approved by it." Mechanics Lumber Co. v. Yates American Mach. Co. 181 Ark. 415, 26 S. W. (2d) 80.

In the case of the Estate Stove Co. v. Kenney, 234 Ill. App. 366, the court said:

"When appellees delivered the written order to the traveling salesman of appellant, that order was not a contract between the parties. It was merely an offer by appellees to purchase the stove. Before it became a contract it had to be accepted by a duly authorized executive

officer of appellant, citing Bay State Mill. Co. v. Barth, 135 Ill. App. 539; Bent v. Jones, 172 Ill. App. 62; E. C. Atkins & Co. v. Kirk, 187 Ill. App. 310."

"A warranty of personal property is personal to the purchaser of the property to whom the warranty is made, and a subsequent sale of the property by such purchaser does not operate to vest in a subsequent purchaser any right of action which the former might have against the original seller for a breach of the warranty for such a warranty does not pass with the property, and, to maintain an action for breach thereof, there must be privity between the parties." Walrus Mfg. Co. v. McMehen, 51 L.R.A.(N.S.) 1111, and note, (39 Okla. 667, 136 Pac. 772).

"To sustain a finding that there was a breach of warranty express or implied, there must have been evidence of a contract between the parties, for without a contract there could be no warranty. The evidence did not show that the plaintiff purchased the gun from the defendants. On the contrary, it showed that they sold the gun to Simmons Hardware Company, by whom it was sold to one Koenig, who sold it to the plaintiff. . . . The warranty, if one was given, was to the hardware company, and not to the plaintiff. And he, as subvendee, has no cause of action upon the warranty." Welshausen v. Charles Parker Co. 83 Conn. 231, 76 Atl. 271.

In the instant case the tractor was sold by the defendant to Ulrick on a dealer's contract. The contract is in evidence and the warranty is to Ulrick and not to the plaintiff. Ulrick sold the tractor to Ranum, who sold it to the plaintiff, who is an entire stranger to the defendant, and has no cause of action upon the warranty upon which the defendant sold the machine.

"An action cannot be maintained on the theory of an implied warranty where there is no privity of contract." Flaccomio v. Eysink, 129 Md. 367, 100 Atl. 510, U. L. A. vol. 1, Sales Act, sec. 69, page 265.

There being no privity of contract between the plaintiff and defendant in the instant case, there could be no warranty and there being no warranty, it follows, that there could not be a breach of warranty and the judgment is reversed and action is dismissed.

CHRISTIANSON, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.