WILLIAM R. DOTSON and WILLIAM R. DOTSON, JR., Appellants, v. INTERNATIONAL HARVESTER COMPANY, a Corporation, and JOHN CROLL, d/b/a CROLL IMPLEMENT COMPANY, Respondents, No. 44104—285 S. W. (2d) 585.

Division Two, December 12, 1955.

Motion for Rehearing or to Transfer to Banc Overruled, January 9, 1956.

*Charles E. Rendlen, Jr.,* and *Rendlen & Rendlen* for appellants.

628

*Alfred M. Wooleyhan* and *Penick & Penick* for respondent International Harvester Company.

*Carstarphen & Harvey,* for respondent John Croll.

[586] BARRETT, C.—This is an action for damages for breach of warranties concerning a two-row, tractor-drawn corn planter. Mr. William R. Dotson and William R. Dotson, Jr., claiming to have been partners in certain farm operations, are the plaintiffs and the purchasers of the corn planter. The defendants are Mr. John A. Croll, who was a dealer in farm machinery and farm implements at Hannibal and sold the corn planter to the Dotsons, and International Harvester Company, the manufacturer of the corn planter. After hearing the evidence adduced by the plaintiffs as well as the defendants' evidence, the trial court sustained the defendants' separate motions for directed verdicts and entered judgment against the plaintiff. Thus, upon the plaintiffs' appeal and this record viewed most favorably to the plaintiffs (Hunter v. Waterloo Gasoline Engine Co., (Mo.) 260 S. W. 970, 971), the question for decision is whether a jury should have been permitted to reason upon the facts and circumstances and find any express warranties by either or both of the defendants respecting the corn planter, whether any express warranties found were shown to have been breached, whether the damages claimed resulted from the breaches and, finally, whether all or any part of the particular damages claimed are recoverable in this action. It is in the fact of the court's having directed verdicts for the defendants. that the questions and the scope of the issues involved upon this appeal differ, in part, from the recent jury submitted cases of Dugan v. Trout, (Mo. App.) 271 S. W.

(2) 593; Davies v. Motor Radio Co., (Mo. App.) 236 S. W. (2) 409; Worley v. Procter & Gamble Mfg. Co., (Mo. App.) 253 S. W. (2) 532 and Heuer v. Ulmer, (Mo. App.) 281 S. W. (2) 320. Originally the plaintiffs made the astounding claim of the loss of four corn crops, for the years, 1947, 1948, 1949, 1950, and damages in the sum of $40,000. But upon entering into the trial of the case, undoubtedly due to the admitted circumstances that the corn planter had not been purchased until March 22, 1948, and was not used by the Dotsons in planting corn in 1950, the plaintiffs amended their petition by interlineation and claimed only the loss of two corn crops, for the years 1948 and 1949, and damages in the sum of $17,000. Consequently, we are now concerned only with the existence of warranties, breaches and losses for the years 1948 and 1949.

In their pleadings, throughout the trial of the case, and upon this appeal, the plaintiffs rely upon express warranties only, both oral and written. They have now assumed the widest possible range, but, undeniably, the warranties claimed and relied upon are express and not implied. When Mr. Dotson called upon Mr. Croll in Hannibal on March 22, 1948, Mr. Croll did not have a two-row, tractor-drawn corn planter in stock. Nevertheless, on that date, Mr. Dotson signed a written "Order For Farm Equipment" for a No. 230 corn planter, for the price of $242.63, "subject to all of the conditions and agreements herein contained AND THE WARRANTY AND AGREEMENT PRINTED ON THE REVERSE SIDE HEREOF." The "Warranty and Agreement" on the reverse side of the order, so far as material here, was as follows: "The Seller agrees to furnish free * * * a new part to replace any part which, with proper use, proves defective during the first ninety (90) days after delivery, provided the [587] defective part is promptly returned. The Purchaser agrees to give each item of equipment a fair trial as soon as possible after receiving and within two (2) days after the first use. If it then fails to work properly and prompt notice is given, the Seller will send a man within a reasonable time to put it in order, the Purchaser agreeing to render friendly assistance. If it still fails to work properly and the Purchaser promptly returns it to the Seller at the Seller's place of business, the Seller will refund the amount paid, which shall constitute a settlement in full. Retention of possession or continued use shall constitute an acceptance and satisfaction of warranty and further assistance rendered the Purchaser shall not be considered a waiver of this provision. * * * No agent of the Seller has authority to alter, add to or waive the above warranties, which are agreed to be the only warranties given and in lieu of all implied warranties."

Space will be conserved and it is hoped that the issues involved upon this record will be precisely delimited by some observations and certain assumptions concerning this separate, express written warranty, sometimes called a "conditional warranty." Dugan v. Trout, supra.

While the plaintiffs claim that they have complied with the conditions of this warranty, or have excuses for their failure to do so, the fact respecting their claim here is that they do not rely upon a breach of this warranty alone as establishing their cause of action. They claim, of course, that the warranty was breached, but a breach of that warranty is not the essence of their claim. The corn planter was delivered to the Dotson farm in April 1948, unassembled and crated. Mr. Dotson and his son were not at home and did not see "the man" who assembled the corn planter, nor did they know the identity of the person who did assemble it, they returned home one day and it was assembled. They tested the corn planter before using it and the test indicated that it was functioning normally and properly in every respect, but they contend that it was not ascertainable that it was virtually a complete failure until after the corn came up and so they could not give and were excused from giving the specified notice after the two days' first use. The corn planter was not returned to the seller's place of business for the purpose of enforcing or complying with the provision respecting the return of the purchase price, they say because Mr. Croll and International Harvester Company representatives persuaded them to keep the corn planter and continue their use of it. Annotation 24 A.L.R. (2) 717; Berry v. Walter A. Wood Mowing & Reaping Machine Co., 62 Mo. App. 41. Whatever the reasons, they still have the corn planter and as late as 1950 had loaned it to a neighbor for the purpose of planting corn. This is not a suit to rescind the contract and recover the purchase price, nor is a breach of this specific warranty asserted as a failure of consideration or as a defense against a suit to recover the contract price of the corn planter. For cases involving these issues and whether there had been compliance with the conditions see Dugan v. Trout, supra; J. I. Case Threshing Machine Co. v. Gardner, 159 Mo. App. 274, 140 S. W. 318; Nichols, Shepherd & Co. v. Larkin; 79 Mo. 264; Gaar-Scott & Co. v. Nelson, 166 Mo. App. 51, 148 S. W. 417; Boyer v. Neel; 50 Mo. App. 26. Likewise, for the purposes of this appeal, we are not concerned with whether the warranty contained in the purchase order provided an exclusive remedy and neither are we concerned with the damages recoverable for breach of this particular warranty. Bank of Polk v. Wood, 189 Mo. App. 62, 173 S. W. 1093; 3 Williston, Sales, Sec. 611a, p. 358. In short, in view of the plaintiffs' excuses and their claim that Mr. Croll had not complied with the warranty, it is assumed solely for the purposes of this opinion that there could be additional express warranties, oral and written, not attributable to the warranty contained in the purchase order (1 Williston, Sales, Sec. 215, p. 554) and that, precisely, is the basis of the plaintiffs' claim of liability in this case. Mayfield v. George O. Richardson Mach. Co., 208 [588] Mo. App. 206, 231 S. W. 288; Meyer v. Packard Cleveland Motor Co., 106 Ohio S. 328, 140 N. E. 118. The plaintiffs, whether recognizing the limitations imposed

632

by the express warranty or for whatever reason, rely upon another printed document and additional express oral warranties by Mr. Croll.

International Harvester Company printed and under the dealership contract furnished Mr. Croll with the blank, printed order form. In addition, in connection with the distribution of corn planters, the company printed and there was attached to each corn planter, or made available to purchasers a pamphlet denominated "Owner's Manual." The Dotsons claim that they were aware of or had read a copy of the manual before purchasing the corn planter. They seize upon the language printed on the covers of the manual and insist that they constitute additional express warranties comparable to the advertisement and oral sales representations contained in Turner v. Central Hardware Co., 353 Mo. 1182, 186 S. W. (2) 603, 158 A.L.R. 1402. It is said that in addition to the warranty contained in the purchase order Mr. Croll admittedly sold the corn planter with the additional warranties contained in the manual. As to International Harvester Company it is said that by printing and distributing the manual the company made "representations that the corn planter would drop seed at regular intervals in rows," representations of *"quality and performance."* While the appellants insist that all warranties were express they either confuse or do not indicate the precise type of warranty relied upon. In their reply brief they say, "These two appellants, farmers, bought this mechanical corn planter for a *specific, definite purpose, so specified by them and so understood by the seller,* to properly, effectively and efficiently plant corn. As the maker thereof, the Harvester Company represented, guaranteed and warranted in writing addressed to the owner and buyer *it would properly, effectively and efficiently plant corn and do the things plaintiffs bought it to do."*

The manual consists of sixty-eight pages of detailed diagrams and pictures of the corn planter and of every part, including every bolt and nut. Each part is identified and its function described and there are detailed instructions as to the assembling of the corn planter and the repair and replacement of the parts. There are several pages of "Parts Lists And Illustrations," each part is given a serial number and is described. The plaintiffs seize upon the printed matter on the covers and the first page of the material as constituting the warranties. They rely upon these two sentences on the front cover: "This manual contains information which will be valuable to you during the entire life of your equipment. Rely on your manual for operating and maintenance information and rely on your International Harvester dealer when in need of skilled mechanical service or genuine IHC parts." On the first page is this statement: "To The Owner. This planter, if properly adjusted and cared for, will give many years of dependable operation. Proper lubrication is important and a lubrication chart is provided on page 2 to aid in keeping the planter lubricated. This

quick-attaching planter, equipped with parts for accurate planting at higher speeds and a power lift which is operated from the tractor, is made of the best material available, and is designed to do many kinds of planting operations. A large variety of seed plates and the multiple drive sprockets give a variety of spacings which cover all needs." On the inside back cover, beneath the headline "Play Safe. . . Insist On Genuine IHC Parts," there appears these sentences: "When you bought your International Harvester tractor or machine, you made a good choice—you have a machine that deserves good care and good service. When wear and tear make new parts necessary, remember why you bought an International Harvester *Quality* Product. You bought quality to be sure of performance. Don't handicap your equipment by careless selection of replacement parts. PLAY SAFE! Go to International Harvester dealer for Genuine IHC Parts. The IHC monogram is your guarantee of quality, [589] your best assurance that your International Harvester Equipment will continue to give you top-grade performance, no matter what you ask of it." On the back cover there are pictures of approximately sixty small parts and under the headline, "Why Genuine IHC Parts Save Money," there appears this statement: "The wise buyer of a farm machine knows that the quality of the parts service he can obtain is frequently quite as important as the original quality of the machine. For these reasons he always buys genuine IHC service parts: 1. IHC parts fit. They are made from the same patterns as the original parts. 2. IHC parts last. * * * 3. IHC parts are priced right. * * * Depend on your McCormick-Deering dealer for all your farm machine service parts. * * *."

 Some of these statements, particularly if read out of context, may have the attributes and qualities of representations of fact which if relied upon by the buyer might induce a sale. 1 Williston, Sales, Secs. 197, p. 506, 206, p. 533. If so, as applied specifically to the corn planter, it is doubtful that they are any broader or of greater import and meaning than the warranty contained in the purchase order. But read in its context it would indeed be a contention in words to say that the language employed was a material representation of fact constituting an express or promissory (Vold, Sales, Sec. 141, p. 441) warranty of the corn planter. It is the "Owner's Manual," but it is precisely what it purports to be, "Setting Up Instructions Parts List." It is addressed to the subject of the assembly, care, maintenance and repair of the corn planter and in so far as it contains representations of fact the emphasis is upon parts with an urgent recommendation that the manufacturer's and dealer's parts be used in repairs and replacements. But this is not determinative because the manual alone does not comprise the explicit warranty relied upon by the plaintiffs.

 The plaintiffs do not rely alone upon the mere force of the language contained in the manual as constituting a warranty, they

assert that Mr. Croll made certain oral representations based upon the manual and that International Harvester Company authorized and ratified his representations or is estopped to deny the fact and that therefore there was a breach of obligation by both Mr. Croll and the company. Some further background is necessary to precisely understand the warranty relied upon. Mr. Dotson testified that corn prices were exceptionally good in 1947 and he and his son decided "to try" for a large acreage of good corn. They had read the literature, the manual, concerning the tractor-drawn corn planter and Mr. Dotson called on Mr. Croll in Hannibal "about our needs. We told him what we intended to do, and what we wanted, what type planter, we wanted one that would plant corn exactly as we wanted it without fail. * * *. We told him we wanted a corn planter that would plant this corn nine inches apart, and that we could use at high speed, and that would put the fertilizer down in the same operation." According to Mr. Dotson, Mr. Croll said, "this planter will be especially suitable for your use." It is then said that Mr. Croll orally made the representations contained in the manual, that Mr. Dotson relied upon them, and thus the sale was accomplished. In their briefs the plaintiffs say that in this manner both Mr. Croll and the company "made and gave express warranties and guarantees that this planter would properly plant corn." At another point in their brief the plaintiffs assert that "warranties as to fitness for a particular use may be contained in literature, manuals or advertisements concerning a particular product." In this connection they state that "Another requirement of warranty in this type of case, is that the representations which warrant the quality and performance of the machine *contribute to the inducement of the purchase, and that the purchaser acted in reliance upon them.*"

It may be assumed, as asserted, that the facts set forth and relied upon constitute a warranty of fitness for a particular purpose by Mr. Croll (Minneapolis Threshing Machine Co. v. Bradford, 206 Mo. App. 609, 227 S. W. 628; Finks v. Viking Refrigerators, Inc., 235 Mo. App. 679, 147 S. W. (2) 124) but it does not necessarily follow [590] that the court erred in refusing to submit the case to the jury upon that theory. Upon this record, one of the underlying, basic reasons for the existence of warranties, particularly the obligation imposed by the warranty of fitness for a particular purpose, does not obtain and is not made to appear. The nature and extent of Mr. Croll's special knowledge of farm machinery is not known, perhaps it should be assumed that he, at least, thought of himself as possessing some particular knowledge and skill, otherwise he would not have been engaged in the business even for a short period of time. Nevertheless, the fact is that Mr. Croll is a farmer and, as the Dotsons, lives in Ralls County. It does not appear whether the Crolls and Dotsons were intimate neighbors, but they are all farm people from Ralls County and their

occupations are primarily that of farmers. Mr. and Mrs. Croll comprised the partnership doing business as Croll Implement Company and entered into a dealer's contract and the business of selling farm machinery manufactured by International Harvester Company February 27, 1947 and by October 31, 1948, they were no longer in the business. Mr. Dotson has owned and operated the 460 acre farm on Salt Creek in Ralls County since 1931. The son, William, Jr., attended the University of Missouri "Agricultural Engineering School" for four years. He was in partnership with his father in their farm operations in 1948 and 1949, actively engaged in actual farm work in 1948 and part of 1949. But in July 1949 William went to work for Mr. Parrish, who succeeded to Mr. Croll's dealership, and thereafter sold International Harvester Company machinery and farm implements, including, presumably, corn planters. In any event, the sale of this particular corn planter by Mr. Croll and its purchase by the Dotsons is not comparable to sales and purchases between total strangers, or, indeed, to a sale by a dealer or retailer "economically able to dictate the processes of manufacture of the goods which they sell." Overstreet, "Some Aspects Of Implied Warranties In The Supreme Court Of Missouri," 10 Mo. L. R. 147, 169; Bogert & Fink, Warranties In Sales, 25 Ill. L. R. 400. In the circumstances of this sale, therefore, it is difficult to find the existence of the underlying, basic factors and reasons impelling and supporting the inference of warranty. A modern two-row, tractor-drawn corn planter may appear to be a fairly complex machine to a layman, but complex as it now is, it is a comparatively simple device, in fact it is yet but a farm implement. The occupations of the parties are of some significance (1 Williston, Sales, Sec. 235, p. 608), and certainly as to a warranty for a particular purpose these parties stand upon an equal footing and it is not possible to find or infer that the Dotsons justifiably relied upon Mr. Croll's superior knowledge and experience, or upon any promissory representations he may have made respecting the corn planter. Vold, Sales, Sec. 142, p. 446; 1 Williston, Sales, Sec. 235, p. 607; Spruce Co. v. Mays, 333 Mo. 582, 62 S. W. (2.) 824; Hunter v. Waterloo Gasoline Engine Co., supra.

In connection with both the warranties and liability for the damages claimed there is a further perplexing aspect to this record. In their briefs it is plainly claimed that International Harvester Company is liable for the loss of both corn crops, the year 1949 as well as 1948. While they do not plainly concede that Mr. Croll is not liable for the loss of the 1949 crop, they tacitly admit the fact. But if they do not so concede, the fact is that upon this record he could not possibly be charged with the 1949 loss. After the planter was delivered and assembled Mr. Croll had nothing further to do with it except that, before it was used, he came by one day when neither of the plaintiffs were home and set the planter wheels 38 inches apart

636

as they had requested, instead of forty-two inches. They say that after the corn came up they complained to Mr. Croll and he repeatedly promised to do something about the planter but never did. In their briefs they say, "Mr. Croll walked out on his responsibility and duty when he sold out in October, 1948." In these circumstances, nothing [591] further appearing, they could not use the planter the second year and charge Mr. Croll with the second year's loss. Annotation 33 A.L.R. (2) 511, Gaar-Scott & Co. v. Nelson, 166 Mo. App. 51, 148 S. W. 417.

In their briefs it is claimed that International Harvester Company made the representations contained in the manual and that the breach of that warranty resulted in the loss of the 1948 crop. As to 1949, it is said, "The following year, 1949, in reliance upon the statement and representation made by defendants' employees Armbruster, Mott, and Pendergast representing that the machine would then and there function and do the job of planting it was supposed to do. The plaintiffs used it again with further resulting damages." As stated, they claim to have talked to Mr. Croll on several occasions after the corn came up but the promissory representations or warranties upon which they of necessity must rely are the warranties inducing the sale, those made by Mr. Croll when the corn planter was purchased and, according to the plaintiffs, they are the signed purchase order, the manual and his oral representations based upon the manual. Ratification and estoppel aside, any statements or representations by either Mr. Croll or employees of International Harvester Company subsequent to the sale, being without consideration, could not be invoked or relied upon as obligations of warranty. Richardson v. Landreth, (Mo. App.) 260 S. W. 128; Moomaw v. Emerson, 80 Mo. App. 318; Moore v. Miller, (Mo. App.) 100 S. W. (2) 331, 335; Brandtjen & Kluge, Inc., v. Hunter, 235 Mo. App. 909, 145 S. W. (2) 1009; Vold, Sales, p. 446.

Neither International Harvester Company nor any of its representatives had anything to do, directly, with the sale of the corn planter to the Dotsons and, of course, made no representations. Mr. Croll sold the corn planter. While the Dotsons claim to have read a manual before purchasing the corn planter, it does not appear where or how they came into possession of it. They say that Mr. Croll had a manual in his place of business when they bought the corn planter and Mr. Dotson says that on that occasion he read "parts of it, the parts describing the planter and what it would do." But the manual offered in evidence by the plaintiffs "came attached to the corn planter delivered to my place" which, obviously, was after the sale. In this connection, in their petition and in their briefs here the plaintiffs assert that Mr. Croll in selling and warranting the corn planter was the agent of International Harvester Company and, inferentially, that certain of the company's representatives were his

agents or acted in his behalf. But there is no evidence from which it could reasonably be inferred within the generally accepted meaning of the word "agent" that Mr. Croll was the company's agent or that its representatives were his agents or acted in any manner in his behalf in connection with the corn planter. Mr. Croll was in business in partnership with his wife and by virtue of a written contract was a "dealer" in the strict sense of the term, engaged in selling farm machinery manufactured by the International Harvester Company and there is no evidence that their relationship was altered or changed into that of principal and agent on either side and there was nothing in the dealings of the parties to lead the Dotsons or anyone else to believe there was. The company furnished Mr. Croll blank order forms, literature and signs bearing the company's monogram but there is no proof that he was the company's agent in selling and warranting the corn planter and it follows as of course that the company was not for that reason obligated by any warranties made by Mr. Croll or, conversely, that he was responsible for the actions of the company or its representatives. McCormick Harvesting Machine Co. v. Heath, 65 Mo. App. 461, 466-467; 2 Williston, Sales, Sec. 445. Compare, particularly upon their facts: Hunter v. Waterloo Gasoline Engine Co., supra; Barry v. Walter A. Wood Mowing & Reaping Machine Co., 62 Mo. App. 41; Hackett v. Van Frank, 105 Mo. App. 384, 79 S. W. 1013; Timberland Lumber Co. v. Climax Mfg. Co., 61 F. (2) 391; Bankers Indemnity Ins. Co. v. Frigidaire Sales Corp., 113 F. Supp. 405.

[592] What has been said concerning agency and representations made after the sale may be sufficient to dispose of the plaintiffs' claim of ratification and estoppel by International Harvester Company. As indicated, the company had no part in making the original sale of the corn planter to the Dotsons and there is no evidence that either the company or its agents were aware of the claim that the corn planter was purchased for a special or particular purpose. It is said, however, that "These original representations were ratified and confirmed by the defendant International Harvester Company by the Company's subsequent action." The claims of ratification and estoppel are based upon the fact that representatives of the company "went to the farm three different times to perform work on the machine so that it would operate as it was represented and warranted to operate. They stated to plaintiffs on these occasions that because of the work the Company had performed the planter would thereafter plant corn as it was supposed to do." It is not necessary to set forth in detail the circumstances in which company representatives went to the Dotson farm or to Hannibal, on one occasion, and looked at, examined, or did some work on the corn planter. William, Jr., did not claim to have had any direct contact with a company representative until the spring of 1949. Incidentally, the acts and conduct relied upon as constituting

638

ratification and estoppel took place in 1949 and as late as 1950. Mr Dotson wrote to the company and called in person upon its branch office in Quincy complaining of the corn planter. But no one from the company responded to the calls until "after the planting season of 1949." Mr. Dotson's letter to the Quincy branch is dated January 7, 1950, and there is a letter in the record from the "service supervisor" of the Quincy branch, Mr. Mott, to Mr. Dotson dated January 4, 1950. In any event, he said, "'The only contact I had with any representative after that time (after Mr. Croll set the planter wheels in) was when Mr. Pendergast came down to Mr. Nichols' place in 1950." On that occasion Mr. Pendergast "worked on" the planter but there was "very little, if any" conversation. Mr. Pendergast did tell the son about the plates but that was in 1950. The son talked to Mr. Arp and Mr. Mott after he began working for Mr. Parrish in July 1949 and "They said they felt sure they could and they would do all in their power to fix it up. * * *." He also talked to Mr. Armbruster after the 1948 season and "He told me we should try a larger plate, and I pointed out that there were some springs evidently missing according to the manual. He said definitely they belonged there and that I should get them." They obtained the springs and different plates but they made no difference, according to William, in the performance of the corn planter. All of this may have some bearing on the waiver of notice and upon the Dotsons' excuses for their nonperformance of the conditions contained in the original purchase order, but there is nothing in the circumstances from which it is a fair inference that their conduct had anything to do with ratifying sales warranties made in 1948 or in which the elements of estoppel to deny the warranties could be found. Cooperative efforts, helpful suggestions, inspections and even repairs one and two years after the original sale may not be construed as new or additional warranties, or a ratification of an original warranty and neither may such conduct be construed as an estoppel concerning a sale and warranty to which the company was not a party. Annotation 24 A.L.R. (2), l.c. 720; Hackett v. Van Frank, supra.

▇▇▇▇ As one of the plaintiffs stated, the springs missing from one hopper and the needed changes in the seed plates were not the things that made the corn planter worthless for the purpose for which it was designed. The fact is that no one knows what, if anything, was wrong with the corn planter. In testifying Mr. Dotson said, "We don't know the trouble with the machine and no one has found out to date, but you couldn't depend on that machine to follow any pattern." In their briefs they say, "It is clear that the exact nature of the defect was never discovered, even by the experts." The evidence relied upon as demonstrating that the planter was worthless [593] was that it was first tested, the tests indicated

that it was functioning properly, and then used and when the corn came up the fact of its failure to plant properly was apparent. To illustrate and briefly note, Mr. Dotson said, "At the end of the fields when we would start out on a row, there would be sufficient corn. * * * It would be thickly planted, bunched up, then it would be scattered out, and some places in between it would be properly spaced. * * * Around nine to eleven inches, and then after that there would be a skip for as long as twenty-five or thirty feet. Then there would be a big bunch of corn drop out, and it followed that same pattern all through the field." As to the 1949 crop, he said, "There would be places where it would be properly spaced, and I would say in 1949 it may have been improved slightly, and then there would be real thick planting where it would be right together, oh say, an inch apart, and then there would be long skips and then it would be properly planted, the same type of planting as in 1948."

This is not to say that this evidence alone is so wholly lacking in probative force that it does not support the inference that the corn planter was defective in some respect or wholly worthless for the purpose for which it was manufactured. Neither is it to say that the evidence is insufficient to show that the loss of the crops or their failure to grow was due to the ineffectiveness of the corn planter. Meyer Furnace & Supply Co. v. Greenwell, (Mo. App.) 297 S. W. 197; 77 C.J.S., Sec. 369c, p. 1308. But it would seem, as to so comparatively a simple implement as a corn planter, that more should be required than mere proof of use and the failure of ultimate result, some evidence of faulty design or defect in parts and specific functions. Worley v. Procter & Gamble Mfg. Co., (Mo. App.) 253 S. W. (2) 532, 538; Overstreet, 10 Mo. L. R., l.c. 192. The mere use of some machines and implements and the failure of results may demonstrate faulty design or defects and thus cogently support the inference of breach of warranty. Advance Rumley Thresher Co. v. Briggs Hardware Co.; 202 Mo. App. 603, 206 S. W. 587; Davies v. Motor Radio Co., (Mo. App.) 236 S. W. (2) 409; Juvland v. Wood Bros. Thresher Co., 212 Minn. 310, 3 N. W. (2) 772; Gale Sulky Harrow Mfg. Co. v. Moore, 46 Kans. 324, 26 Pac. 703; Hallock v. Cutler, 71 Ill. App. 471. But in most instances there has been proof of specific defects or proof of a failure of function which demonstrated unfitness of purpose or breach of warranty. Dugan v. Trout, supra; Heuer v. Ulmer, (Mo. App.) 281 S. W. (2) 320; Witte v. Cooke Tractor Co., (Mo. App.) 261 S. W. (2) 651; Dubinsky v. Lindburg Cadillac Co., (Mo. App.) 250 S. W. (2) 830.

It should be carefully noted that this appeal has been considered and treated upon the basis and theories upon which it was tried and presented here. For the reasons indicated, the trial court did not err in sustaining the defendants' motions for directed verdicts and,

accordingly, the judgment is affirmed. *Bohling and Stockard, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.