UNITED STATES RUBBER COMPANY, Appellant,

v.

Eugene BAUER, Appellee.

No. 17128.

United States Court of Appeals Eighth Circuit.

June 26, 1963.

**464**

Russell R. Mather, of Jansonius, Fleck, Mather & Strutz, Bismarck, N. D., Walter Barthold, of Arthur, Dry, Kalish, Taylor & Wood, New York City, for appellant.

Floyd B. Sperry, Bismarck, N. D., for appellee.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

BLACKMUN, Circuit Judge.

Eugene Bauer, a North Dakota farmer, was injured on August 6, 1959, when the drive belt on his combine broke and struck him on the head. He instituted this diversity action against the manufacturer of the belt. By his twice amended complaint he based his suit on negligence and implied warranty.

The case was tried without a jury. The court found that the "belt and the series in which the same was manufactured, were defective" and concluded that the plaintiff was entitled to prevail because the belt "was not reasonably fit for the purpose for which it was intended and sold". There was no specific finding or conclusion as to negligence. In an accompanying unreported memorandum the court concluded that privity of contract was no longer essential under North Dakota law in order to recover for breach of implied warranty, citing North Dakota Century Code § 51–01–16, par. 1 (the Uniform Sales Act); Wood v. Advance Rumely Thresher Co., 1931, 60 N.D. 384, 234 N.W. 517; Deere & Webber Co. v. Moch, 1942, 71 N.D. 649, 3 N.W.2d 471, 139 A.L.R. 1270; State Farm Mut. Auto. Ins. Co. v. Anderson-Weber, Inc., 1951, 252 Iowa 1289, 110 N.W.2d 449; and Beck v. Spindler, 1959, 256 Minn. 543,

99 N.W.2d 670. Judgment was entered in favor of the plaintiff. The defendant has appealed.

Bauer, at the time of the accident, was about 37 years of age. He was an experienced farmer and conceded that he had "been around farm machinery all my life", except for a 4-year period, and that he was "well acquainted with farm machinery" and with "other belt drive mechanisms". He had purchased the combine new in August 1953 from a farm supply company in Beulah, North Dakota. This firm in turn had acquired it from its wholesaler at South St. Paul, Minnesota. Bauer had covered between 1500 and 2000 acres a year with the combine from 1953 through 1958 and "had good service out of it".

A belt which came as original equipment on the combine had, by August 1958, "stretched out so it would slip". Bauer bought a new replacement belt from the Beulah firm and installed it himself. He then was able to complete the remaining 20 acres of his harvesting for that year. He used the combine with the new belt for about 430 acres in 1959. He had finished his wheat and had started cutting barley. He was at this the morning of August 6 when he thought he heard noise in the machine. He stopped. He examined the combine but could find nothing wrong with it. He greased it. He did not at that time check the belt. He returned to his harvesting. In the early afternoon he was moving along at a speed slower than usual. This reduction was occasioned by the shortness of the grain and the fact the hopper was filling. The ground was fairly level and not rocky. The barley was not heavy. The belt suddenly broke and Bauer's injuries were inflicted.

The defendant raises three points on this appeal. It asserts, first, that the court's finding that the belt was defective was clearly erroneous within the meaning of Rule 52(a), F.R.Cv.P. It claims, next, that the requirement of the Rule that "the court shall find the facts specially" has not been met and the vagueness of the finding as to the condi-

tion of the belt constitutes reversible error. It argues, last, that the court's conclusion as to liability was erroneous as a matter of law because of the absence of privity of contract essential under North Dakota law for an action based on implied warranty.

It may be well at this point to recite established principles which have application here:

■ 1. North Dakota law, of course, governs the substantive issues in this diversity case. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

■ 2. Burden of proof is "substantive". Dick v. New York Life Ins. Co., 1959, 359 U.S. 437, 446, 79 S.Ct. 921, 3 L.Ed.2d 935; Guaranty Trust Co. of N. Y. v. York, 1945, 326 U.S. 99, 109, 65 S. Ct. 1464, 89 L.Ed. 2079.

■ 3. Under North Dakota law that burden is on the plaintiff, whether the action sounds in negligence, Stokes v. Dailey, N.D.1957, 85 N.W.2d 745, 751; Schmitt v. Northern Improvement Co., N.D.1962, 115 N.W.2d 713, 718, or in breach of warranty, Citizens' Bank v. Crane Creek Tp., 1930, 59 N.D. 604, 610, 231 N.W. 281, 283. See Jessen v. Schuneman's, Inc., 1955, 246 Minn. 13, 16, 73 N.W.2d 786, 788.

■ 4. Of course a question of negligence or proximate cause is ordinarily for the trier of fact. Myers v. Mandan Consumers Coop. Ass'n, N.D.1958, 93 N.W.2d 51, 53; United States Fire Ins. Co. v. Milner Hotels, Inc., 8 Cir., 1958, 253 F.2d 542, 546; Greene v. Werven, 8 Cir., 1960, 275 F.2d 134, 137.

5. In the Dick case, supra, pp. 444–445 of 359 U.S., pp. 925–926 of 79 S.Ct., 3 L.Ed.2d 935, the Supreme Court specifically did not decide whether, in a diversity action, a state or a federal test of the sufficiency of the evidence is to be applied. It refrained from so doing because "both parties assumed that the North Dakota standard applied". The question has not since been resolved by that Court. We have noted its existence on more than one occasion but we, too,

have not resolved it, either because litigants have assumed the state standard applied or because we concluded that the state and federal standards were substantially alike, or both. Ford Motor Co. v. Mondragon, 8 Cir., 1959, 271 F.2d 342, 345; Bennett v. Wood, 8 Cir., 1959, 271 F.2d 349, 351; Lewis v. Nelson, 8 Cir., 1960, 277 F.2d 207, 209–210; Hanson v. Ford Motor Co., 8 Cir., 1960, 278 F.2d 586, 589–590; Bankers Life & Cas. Co. v. Kirtley, 8 Cir., 1962, 307 F.2d 418, 421–422. For the same reasons we need not decide the question in this case.

■ 6. "Negligence on the part of a defendant is never presumed merely from proof of the accident, but must be affirmatively proved." Severinson v. Nerby, N.D.1960, 105 N.W.2d 252, 255; Mischel v. Vogel, N.D.1959, 96 N.W.2d 233, 236. See Young v. Willys Motors, Inc., 8 Cir., 1959, 271 F.2d 209, 213.

■ 7. The same is true with respect to an alleged defect in a products liability case. Rexall Drug Co. v. Nihill, 9 Cir., 1960, 276 F.2d 637 (applying California and North Dakota law).

8. This does not mean that this proof may not be supplied by circumstantial evidence. Mischel v. Vogel, supra, p. 236 of 96 N.W.2d; Farmers Home Mut. Ins. Co. v. Grand Forks Implement Co., 1952, 79 N.D. 177, 55 N.W.2d 315, 318.

■ 9. A verdict may not rest on guess or speculation, Rexall Drug Co. v. Nihill, supra, pp. 644–645 of 276 F.2d; Meehan v. Great Northern R. Co., 1904, 13 N.D. 432, 101 N.W. 183, 186, or emerge from "equally probable" causes, Farmers Home Mut. Ins. Co. v. Grand Forks Implement Co., supra, p. 318 of 55 N.W.2d; Myers v. Mandan Consumers Coop. Ass'n, supra, p. 53 of 93 N.W.2d; Farmers Mercantile Co. v. Northern Pacific R. Co., 1914, 27 N.D. 302, 146 N.W. 550, 555.

■ 10. In a products liability case it is not necessary that the product be perfect or accident proof. It need only be reasonably fit for the use for which it was intended. N.D. Century Code 51–01–16, par. 1; Cretors v. Troyer, 1933,

63 N.D. 231, 247 N.W. 558; Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802, 804; Watts v. Bacon & Van Buskirk Glass Co., 1959, 18 Ill.2d 226, 231–232, 163 N.E.2d 425, 428; Hunt Truck Sales & Service, Inc. v. Omaha Standard, S.D. Ia., 1960, 187 F.Supp. 796, 802.

■ 11. In the absence of proof of the existence of a defect a defendant may not be held liable for negligence in manufacture. Rexall Drug Co. v. Nihill, supra, p. 643 of 276 F.2d; Hofstedt v. International Harvester Co., 1959, 256 Minn. 453, 459–461, 98 N.W.2d 808, 812–813; Wojciuk v. United States Rubber Co., 1963, 19 Wis.2d 224, 120 N.W.2d 47, 52. Contrast Ford Motor Co. v. Zahn, 8 Cir., 1959, 265 F.2d 729, 731. Similarly, in the absence of such proof, a defendant may not be held responsible on the theory of implied warranty. Jessen v. Schuneman's, Inc., supra, p. 17 of 246 Minn., p. 789 of 73 N.W.2d; Frame v. Hohrman, 1949, 229 Minn. 468, 475, 39 N.W.2d 881, 885; Moore v. Hecht Co., 4 Cir., 1962, 298 F.2d 892; Superior Combustion Indus. v. Schollman Bros. Co., 8 Cir., 1959, 271 F.2d 357, 363; Rexall Drug Co. v. Nihill, supra, p. 643 of 276 F.2d; Dotson v. International Harvester Co., 1955, 365 Mo. 625, 285 S.W.2d 585, 593. See Citizens' Bank v. Crane Creek Tp., supra, p. 283 of 231 N.W.

■ The replacement belt in question placed in evidence by the defendant, was about 11 feet long, 2 inches wide, and 1½ inches thick. It weighed about 5 pounds. It was a type known as TXS-67. The Beulah firm where Bauer obtained the belt purchased it from the same South St. Paul wholesaler which had sold the combine. The defendant had been manufacturing the TXS-67 since 1953. The belt which came as original equipment on the combine when it was new was not manufactured by the defendant. In addition, there was evidence to the following effect:

1. The wholesaler for some years had had TXS-67 belts returned. These included belts which had been original equipment and not manufactured by this defendant.

2. The belt which injured the plaintiff was itself replaced by still another from the Beulah firm. Over the defendant's objection Bauer and another witness testified that this third belt also broke in 1959 after it had been used for 330 acres.

3. Bauer traded the combine in to the Beulah firm in 1960. That firm made no adjustments or repairs on it. It first leased and then sold it in March 1961 to another farmer in the area.

4. Richard Teske testified that since 1957 he had worked at the Beulah firm's service station; that he had received training as a mechanic in 1960 for two weeks in St. Paul; that this had to do with the assembly and operation of combines; that he was the head mechanic for the Beulah firm and did its principal work on combines; that in 1959 he replaced the belt which had injured Bauer; that when he installed it he did not have to make any adjustments; and that the pulleys were in proper alignment at that time. The defendant had a standing objection to all this testimony.

5. Witnesses from both sides testified as to the breakage of combine drive belts and in particular of those of the TXS-67 type.

6. Over objection the plaintiff introduced in evidence a form letter dated November 6, 1959, from the South St. Paul wholesaler to its farm machinery catalog holders. This recited, "We have had failures in combine belt No. TXS 67 * * * return to us immediately any of these you have on inventory * * *. There is a change being made in the belt to strengthen it and the manufacturer is accepting the return of these belts. Kindly give this your immediate attention!"

7. The defendant's sales engineer in Minneapolis, called by the plaintiff, testified that the TXS-67 "had failures periodically throughout any year that you want to take"; that "Any belt of

that nature will have that failure"; that his company had agreed with the wholesaler to accept the return of these belts; that about 40 belts of the series had broken from 1958 to 1960; that there was breakage back in 1954 in this series and in another; that the belt was strengthened at that time; that in 1960 the defendant began to use a new construction and mold; and that belt breakage is affected by size and heaviness of the crops and by the maintenance and alignment of the mechanisms on which the belts are used.

8. The South St. Paul firm's parts supervisor, called by the plaintiff, testified on cross-examination that misalignment of pulleys and crop conditions are factors which cause thresher belts to break.

9. The defendant's manager of quality control, called by the defendant, testified on cross-examination that the TXS-67 had been recalled; that the defendant took about 200 back, many of which were new; that between 3 and 10 of these had broken in a manner similar to the Bauer belt; and that if a belt were running too tightly it would snap the way that one did.

10. About this time design changes were made in the combine.

11. The defendant's principal witness was James Adams, Jr., chief engineer in charge of research and product design and belt testing for Raybestos-Manhattan Corporation, a belt manufacturer. He was a graduate mechanical engineer with 21 years' experience with his company. He testified that at the defendant's request he had examined the Bauer belt and applied to it the standard tests of the industry; that there was "no detectable defect in this belt from the manufacturing standpoint"; that its base rubber and cords were satisfactory and normal; that there were some cords which had ruptured "indicating to us a condition of fatigue, which is a normal event that takes place in the life of a belt as it commences to wear"; that on the Bauer belt were markings where the rubber coating was "cleaned off" on the sides; that this occurs when there is misalignment; that misalignment and loss of tension cause excessive wear on the belt and "degradation of structure"; and that this particular belt as manufactured was suitable for the work which it was designed to perform. On cross examination he testified that breakage of cylinder belts is common around the country; that the wear on the belt was due to misaligned pulleys; that the normal life of a belt of this kind could be anything from one hour to one or two thousand hours; that a number of factors enter into a belt's useful life; that an original belt on a new machine usually lasts longer than a replacement belt; that no two belts last the same length of time; that a belt does not break because of lack of strength but because of fatigue; that tensile strength is no criterion of the fatigue life of a belt; and that the Bauer belt failed from bending fatigue.

The plaintiff offered no evidence as to what caused this belt to break.

If we lay to one side the testimony of Mr. Adams and of the other witnesses called by the defendant, the plaintiff's evidence, viewed in the light most favorable to him as the prevailing party below and with the benefit of all inferences reasonably to be drawn therefrom, Ford Motor Co. v. Mondragon, supra, pp. 345–346 of 271 F.2d, and including the material admitted over objection, does not, we conclude, apart from the possible application of res ipsa loquitur, establish a case for the plaintiff on either a theory of negligence or of products liability. The plaintiff's case proves or tends to prove only the following and nothing more: The belt originally on the combine did not break but stretched until it was of no further use; the defendant manufactured the replacement belt; it broke rather suddenly after some use under not unusual conditions; when it broke it occasioned Bauer's injuries; when Teske installed the third belt he concluded that the pulleys were properly aligned and made no adjustments in the mechanism; this third belt, too,

broke after moderate use; after Bauer's accident the defendant recalled belts of this particular type from the market; its South St. Paul wholesaler advised its own customers that there had been failures in the belt and that changes were being made to strengthen it; there had been breakage in the TXS-67; specifically, 40 belts of the defendant's manufacture broke in the period from 1958 to 1960; and the belt was redesigned in 1960.

But the plaintiff's evidence also discloses that combine drive belts do wear out and break and that suppliers do stock replacement belts. That the defendant, after consultation with its South St. Paul wholesaler and the latter's retail customers, called in belts of that type is not necessarily a concession of defect in manufacture. Its doing so is just as consistent with a genuine concern on the defendant's part that any injury had resulted with one of its belts, with a cautious desire to ascertain if there was a defect, and with a willingness to cooperate fully with its established customers. We are left with no proof or reasonable inference as to why this belt broke at this time.

▆▆▆ This leaves only the possible application of res ipsa to the fact situation before us. It has been said that the doctrine is not applicable to actions based on implied warranty. 77 C.J.S. Sales § 365, p. 1287; State Farm Mut. Ins. Co. v. Anderson-Weber, Inc., supra, p. 452 of 110 N.W.2d; Trust v. Arden Farms Co., 1958, 50 Cal.2d 217, 324 P.2d 583, 586, 81 A.L.R.2d 332. In any event, it does not apply in the absence of appropriate control on the part of the defendant over the instrument at the time of the accident. Jessen v. Schuneman's, Inc., supra, p. 17 of 246 Minn., p. 788 of 73 N.W.2d; Wojciuk v. United States Rubber Co., supra, p. 52 of 120 N.W.2d; Bergley v. Mann's, N.D.1959, 99 N.W.2d 849, 853. We do not relate this case to those where, although control is not present at the time of the accident, the circumstances are such that there is more probability that any defect existed when the product left the defendant's possession than that it was created by subsequent occurrences. Wojciuk v. United States Rubber Co., supra, p. 52 of 120 N.W.2d. See Kuntz v. McQuade, N.D. 1959, 95 N.W.2d 430, 432. This belt in fact had been on the plaintiff's combine for almost a year. Neither do we relate the case to those where the apparent cause of the accident is such that the defendant would be solely responsible for any negligence in connection with it. Here the unexplained accident may reasonably be attributed to one or more causes for which the defendant is not responsible and it would be "error to apply the rule as a basis for a permissive inference of negligence." Boutang v. Twin City Motor Bus Co., 1956, 248 Minn. 240, 244, 80 N.W.2d 30, 36; Lovejoy v. Minneapolis-Moline Power Implement Co., 1956, 248 Minn. 319, 332, 79 N.W.2d 688, 697; Sleezer v. Lang, 1960, 170 Neb. 239, 102 N.W.2d 435, 446. See Farmers Home Mut. Ins. Co. v. Grand Forks Implement Co., supra, p. 318 of 55 N.W.2d.

The following cases, among others, are guideline decisions for our conclusion in this one. Jessen v. Schuneman's, Inc., supra, 246 Minn. 13, 17, 73 N.W.2d 786, 789; Wojciuk v. United States Rubber Co., supra, 19 Wis.2d 224, 120 N.W.2d 47; Hofstedt v. International Harvester Co., supra, 256 Minn. 453, 459–461, 98 N.W.2d 808, 812–813; Young v. Willys Motors Inc., supra, 8 Cir., 271 F.2d 209; Ford Motor Co. v. Mondragon, supra, 8 Cir., 271 F.2d 342; Harward v. General Motors Corp., 1952, 235 N.C. 88, 68 S.E. 2d 855; Rexall Drug Co. v. Nihill, supra, 9 Cir., 276 F.2d 637.

We are driven to conclude, therefore, that the trial court's finding that the belt was defective was clearly erroneous within the meaning of Rule 52(a), for on the entire evidence we are "left with the definite and firm conviction that a mistake has been committed", United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, and that the finding is "contrary to the clear weight of all the

·evidence", Kauk v. Anderson, 8 Cir., 1943, 137 F.2d 331, 333.

This obviously makes it unnecessary for us to determine whether under North Dakota law an action for breach of implied warranty may lie in the absence of privity of contract; whether evidence received over the objections of the defendant was improperly admitted; or whether the findings fall short of the requirement of Rule 52(a).

Reversed wtih directions to enter judgment for the defendant.